No. 13,286.

STATE OF LOUISIANA VS. AGENOR GIRON, JR.

SYLLABUS.

Where a juror, upon his *voir dire.* denies having formed or expressed any opinion as to the guilt of the accused, and is accepted as a juror, and the accused is convicted ; and it is thereafter made to appear, upon the trial of a motion for new trial, that such juror had expressed a decided opinion, adverse to the accused, and had persisted in it ; and it is further shown that neither the accused nor his counsel knew of such expression of opinion, prior to the conviction, a new trial should be granted.

APPEAL from the Eleventh Judicial District, Parish of St. Landry. *Dupre, J.*

*Milton J. Cunningham,* Attorney General, and *R. Lee Garland,* District Attorney, (*Charles M. Cunningham,* of Counsel,) for Plaintiff, Appellee.

*C. F. Garland* and *E. B. DuBuisson* for Defendant, Appellant.

The opinion of the court was delivered by

MONROE, J.   Defendant having been convicted of manslaughter, and duly sentenced, has appealed, and his counsel rely, in this court, upon a bill of exceptions taken to the ruling of the judge *a quo* in refusing a new trial.

It appears, from the record, that the defendant, having been tried and convicted, a motion for new trial was filed, based upon the ground that the verdict was contrary to law and the evidence, and that said motion was overruled.   Subsequently, and before sentence, another application, in the form of a petition for new trial, was made, which was verified by the affidavits of the petitioner and his counsel, and reads as follows, to-wit:

"That Jacob Vatter, one of the jurors of the panel that returned "a verdict of guilty of manslaughter against him (defendant), "shortly after the commission of the alleged crime, at the store of "C. P. Richard in the suburbs of Opelousas, publicly expressed him-

"self to the effect·that, if he were taken on the jury that would try "petitioner, he would vote to find him guilty; that among those who "heard him so express himself were the said C. P. Richard, A. M. "Hollier, and Louis Vanhille, all residents of Opelouses or its "vicinity; that the said Vatter, when examined on his *voir dire,* "stated that he had neither formed nor expressed an opinion as to the "petitioner's guilt or innocence; that, neither at that time, nor when "the application for new trial was filed and submitted, did either "petitioner or his counsel know that the said Vatter had so expressed "himself as aforesaid, and that is why the matter was not called to "the court's attention until this time."

Upon the trial of this application, it was admitted that the juror, Jacob Vatter,· "when examined on his *voir dire,* before being sworn in "chief, was asked the question, 'whether he had formed or expressed "an opinion as to the guilt or innocence of the defendant, and replied "that he had not.' It was further admitted that "neither defendant, "nor his counsel has heard or knew of the alleged expression of "opinion by said juror, as set forth in the alias application for a new "trial, until after the verdict and the filing of the original motion "for new trial."

And the following testimony was elicited, to-wit:

Louis Vanhille testifies: "When I got to Mr. Richard's store, Mr. "Jacob Vatter, Mr. A. M. Hollier, and Mr. Richard, the proprietor, "were there, on the morning after Mary Hardy met her death; they "were in conversation then about the case. One of the parties, I "don't remember which one, asked how was Giron, if he was dead or "dangerously shot. I had not seen him. Mr. C. P. Richard said it "was the best thing for him, because it would be a rope case, sure. "Mr. Vatter was sitting near the counter, smoking a cigar; he got up "from his seat, and said: 'Its more than likely to be a hanging "scrape;' he said 'it's a case I would not like to serve on because I "would be bound to convict him.' By that time Mr. Richard went "round the counter to give me his order. After I got his order, I left "and heard no more of the case."

A. M. Hollier testifies: "I was at Mr. C. P. Richard's store shortly "after the killing of Mary Hardy. Mr. Jacob Vatter, and Louis Van- "hille, besides Mr. Richard, the proprietor, were there. I remember "when Mr. Vatter expressed himself, that, from what he had heard of "the case, that it would be a hanging scrape, and if he was to get on

" that jury, he would be bound to hang him. Then I asked him how
" could he form an opinion from hearsay, and we kept on discussing
" the subject, and I remarked to him that I never expressed my opin-
" ion before I heard the evidence on both sides. I was on the jury
" when the prisoner was first placed on trial. I was one of those who
" stood out for acquittal. I think there were nine of us for acquittal."

C. P. Richard testifies: "Shortly after the killing of Mary Hardy,
" I remember that we talked about it when Mr. Vatter, A. M. Hollier,
" and Louis Vanhille were in the store, but I do not recall the conver-
" sation well enough to give the substance of it."

Maurice J. Dufilho testifies: "I am a brother-in-law of A. M.
" Hollier; he married my sister. * * * After the first trial of
" Agenor Giron, Mr. Vatter and I were talking about the mistrial in
" the Giron case, and Mr. Vatter told me that he could not understand
" how a man like Mr. A. M. Hollier could acquit a man that had com-
" mitted such a crime. I told him that I had followed the case, and
" heard every witness speak, and I thought he was right to hold out
" for acquittal; he told me he knew all about it too."

Jacob Vatter testifies: "I lived in the parish of St. Landry about
" forty-three years. I came here when I was six years old. I am a
" property holder in the parish.

"Q. Before you served as a juror in the case of the State against
Giron had you any fixed opinion as to his guilt or innocence?

"A. I had not.

"Q. Had you heard anything more than the general rumors that
one generally hears, when a crime is alleged to have been committed?

"A. I had not.

"Q. State whether you remember any of the conversations alleged
to have taken place at the store of C. P. Richard, and referred to in
the testimony of Louis Vanhille?

"A. No, sir; I heard not a word of any such conversation.

"Q. You had no interest, one way or the other, in the suit against
Giron?

"A. No, sir.

"Q. Did you have a conversation with M. J. Dufilho as referred to
by him?

"A. No, sir; not regarding this case.

"Q. Do you remember seeing him at the camp meeting?

"A. I do.

"Q. When was it that you ascertained that A. H. Hollier was a member of the jury on the first trial of Giron?

"A. Just now, this morning.

"Q. In rendering your verdict as a juror in this case, were you influenced entirely by the evidence, or were you influenced in any respect by the rumors previously heard by you?

(Objected to; objection overruled, and bill reserved).

"A. I was influenced entirely by the evidence. I had no opinion as to his guilt or innocence."

In the bill of exceptions taken to the overruling of the application for new trial, it is recited that the statements which were said to have been made were proved by the testimony of "three disinterested, unimpeached and unimpeachable witnesses."

The judge *a quo* gave the following reasons, incorporated in said bill, for overruling said application, to-wit:

"I do not believe Mr. Vatter had any fixed opinion, when he entered " the jury box. He may (the day after the homicide) have said, from " what he had heard, it might be a hanging scrape, as testified to by " the witness A. M. Hollier, but beyond this, I feel satisfied he had " neither formed nor expressed any opinion as to the guilt of the " accused. The writer has known Mr. Vatter for the past thirty " years, and no man in this vicinage has a better character for truth " and veracity and as an all-around good citizen, than he. He can " have no motive in stating anything but the truth. Not so with the " witness Vanhille, who is a first cousin to the accused."

It has been held by this court that, "Rulings of the trial judge, on " questions not submitted to the jury, but to the judge, alone, and in- " volving blended issues of law and fact, are reviewable in this court, " on the facts as well as on the law, provided the testimony has been " reduced to writing and embodied in, or attached to, the bill of ex- " ceptions taken to the ruling." State vs. Nash & Barnett, 45 Ann., 1137.

The question, here presented, falling within the rule thus stated, and the requisite conditions having been complied with, it becomes our duty to review the ruling complained of.

It will be observed that the character of the witnesses, Vanhille, Hollier, and Dufilho, for truth and veracity, is said, in the bill of exceptions, to be "unimpeached and unimpeachable," and that the judge *a quo* does not challenge that statement. It will also be

observed that, in giving his reasons for overruling the motion for new trial, the learned judge whilst strongly indorsing the character of the juror, Jacob Vatter, concedes that he might have expressed his opinion as stated by the witness Hollier. But the juror himself, has twice, under oath, denied that he expressed any such opinion. Once, when sworn on his *voir dire,* and a second time, specifically and categorically, when examined as a witness upon the application for new trial. And he also denied the statements attributed to him by the witness Dufilho, who, like the other witnesses, is entirely unimpeached. Under the circumstances, we feel bound to accept it as a fact that the juror had expressed himself before the, trial, as is stated in the testimony which has been recited.

We have, therefore, the admission that the juror was questioned on his *voir dire,* and that he then stated that he had neither formed nor expressed an opinion as to the guilt or innocence of the accused; we have the fact established by the evidence, that he had, prior to that time, and shortly after the homicide, stated that he considered it a hanging matter, and that he would be bound to hang the accused if he were on the jury; and that, at a late period, after there had been a mistrial, he stated that he could not understand how a man like Hollier, who had served on the jury, could acquit a man who had committed such a crime; and, replying to the remark made by Dufilho, with whom he was talking that he, Dufilho, had heard all the evidence, he said that he too knew all about the case; and, finally, we have the admission that neither the defendant nor his counsel knew of those expressions of opinion until after the trial, and in fact, until the first motion for new trial had been filed and overruled.

The only question which remains, then, is whether, these admitted and established facts considered, the defendant can be held to have been tried by an impartial juror. And this question, we think, must be answered in the negative. For, not only had the juror who tried him expressed a decided opinion, adverse to the accused, but this had been repeated at another and later period, in the form of an expression of surprise that a particular juror, who served on the first trial, should have been in favor of an acquittal, coupled with a statement that he, the speaker, knew all about the case; and all this was denied when the juror was examined on his *voir dire,* so that the defendant's counsel accepted him as a competent juror, who had neither formed nor expressed any opinion whatever.

It is true that if a juror who is examined upon his *voir dire* admits having expressed an opinion as to the guilt of the accused, he may nevertheless be held by the court to be a competent juror, if it appears upon his further examination that the opinion thus formed was based upon rumor; that it was not "fixed, absolute, positive, definite, settled, decided or unconditional." State vs. Williams, 49 Ann., 1152. But, though he may be so held by the court, the prosecuting officer, representing the State, or the counsel representing the accused, hearing his statements, may reach a different conclusion as to the character of his opinions, and may elect to challenge him peremptorily. In the instant case, however, the counsel for the accused had no such opportunity, and the juror was accepted in good faith, because, upon his examination on his *voir dire,* he stated, not that he had formed an opinion that would yield to the evidence which might be submitted to him as a juror, but that he had neither formed nor expressed any opinion whatever.

Under these circumstances, his testimony on the trial of the application for new trial, to the effect that his verdict was based on the evidence, etc., comes too late to qualify him as a juror, because the time at which the defendant, acting upon any testimony that he might give, could exclude him from the jury had passed.

For these reasons, we are of opinion that the court *a qua* erred in refusing the new trial prayed for, and it is therefore ordered, adjudged, and decreed, that the judgment appealed from be annulled, avoided and reversed, that the verdict herein found, be set aside, and that this cause be remanded to be proceeded with according to law.