211 So.2d 273

**STATE of Louisiana**

v.

**Gilbert Lee SCHOONOVER.**

**No. 48892.**

June 4, 1968.

Rehearing Denied June 28, 1968.

■■■■■■■■■■■■■■■■

———◆———

Bernard S. Dolbear, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Frank H. Langridge, Dist. Atty., Thomas P. McGee, Asst. Dist. Atty., for appellee.

SUMMERS, Justice.

Gilbert Lee Schoonover and his brother Willie Ernest Schoonover were jointly charged by bill of information with armed robbery. La.Crim.Code art. 64. Prior to trial Willie Schoonover pled guilty. Gilbert was tried, convicted and sentenced to serve fifteen years at hard labor. He appeals from the conviction, relying upon eleven bills of exceptions reserved to alleged errors in the proceedings in the trial court.

■ Bill of Exceptions No. 1 was reserved during voir dire examination when the assistant district attorney, in questioning one of the prospective jurors, asked him if he understood what was necessary, under the law, to make a party to a criminal transaction liable as a principal to the crime. The trial judge likewise sought to explain this point of law to the prospective juror.

Defense counsel objected to explanations of legal propositions on voir dire examination and his objection was overruled. We are satisfied that there was no abuse of the discretion allowed the trial judge in regulating voir dire examination, for the point of law did bear some explanation to test the prospective juror's ability to comprehend the evidence which would be relevant to the prosecution at the trial.

■ The extent to which counsel may examine jurors on their voir dire rests largely within the discretion of the trial judge. State v. Green, 244 La. 80, 150 So.2d 571 (1963). A wide latitude in the exercise of the judge's discretion is allowed by a liberal attitude of the appellate courts. See State v. Hills, 241 La. 345, 129 So.2d 12 (1961). In general, however, we have not approved of lengthy statements of particular phases of law being expounded to jurors on their voir dire examination as a preface to interrogation, for this practice tends to facilitate attempts to commit the juror's vote in advance of deliberation. Care should be exercised by the trial court to prevent this result. La.Code of Crim.P. art. 357 (1928). State v. Bickham, 236 La. 244, 107 So.2d 458 (1958).

■ Bill of Exceptions No. 2 was reserved during voir dire examination when defense counsel objected to an explanation by the State's attorney of the law relating to conspiracy and to a question propounded by the State's attorney in which he sought to ascertain if the prospective juror understood the law relating to conspiracy. The

objection was overruled. The bill of information in this prosecution charges that the crime was committed by two persons and, therefore, the crime necessarily involved a conspiracy. State v. Skinner, 251 La. 300, 204 So.2d 370 (1967). Evidence of a conspiracy would be relevant upon the trial, and the ability to understand the somewhat complex problems which might arise under the law of conspiracy was essential to the juror's ability to act intelligently in the case; therefore, there was no error in the ruling of the trial judge on this bill.

Bills of Exceptions Nos. 3, 4 and 5 were reserved to the refusal of the judge to give three special charges requested by the defense.

■ The first requested charge, which was refused and to which Bill No. 3 was reserved, read: "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the criminal consequences of his act."

The evidence indicates the defendant Gilbert Schoonover and his brother Willie Schoonover robbed two service stations a few blocks from each other, minutes apart, as one continuous unlawful act. The defendant Gilbert Schoonover was the driver of the car, and his brother Willie Schoonover was the main actor who assaulted the victim in each instance.

In its general charge, the court instructed the jury in the language of Article 64 of Louisiana Criminal Code (Armed Robbery), Article 65 (Simple Robbery) and Article 67 (Theft). We think the requested charge is covered by reference to the language of these articles, together with the following extracts from the trial judge's written charge: "An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential (to the crime of armed robbery)" (Parentheses added) and the following:

"It is essential that the State should prove, not merely the use of force or intimidation, and the taking of the thing of value from the prosecuting witness, but, also that *such taking was with the intention to commit theft*." (Emphasis added.)

\* \* \* \* \* \*

"Mere presence at the time the offense is committed without intention to participate or in any way contribute to its commission, is not sufficient to make one a principal."

\* \* \* \* \* \*

"Where a joint enterprise is sought to be shown, or it is the theory of the State that, parties jointly tried aided, assisted and abetted each other in the commission of the offense charged, it is not necessary that the State show that a formal concert of action or conspiracy was entered into between the parties. It is only necessary that the jury be convinced

beyond a reasonable doubt by all of the evidence adduced that the parties did act in concert and together in the consummation of the criminal enterprise, and that their acts were knowingly and intentionally performed in the furtherance of a common purpose."

The language quoted from the judge's general charge properly fulfilled the requirements of a charge of specific intent and the requested charge was therefore properly denied.

■ Bill of Exceptions No. 4 was reserved to the refusal of the court to give the following special charge:

"Where the circumstances indicate that an intoxicated condition has precluded the presence of a special criminal intent in a particular crime, this constitutes a defense to a prosecution for that crime."

In his general charge the judge charged the following on intoxication:

"Gentlemen, the general rule of law is that voluntary drunkenness does not exempt a man from criminal responsibility for his acts. A drunken man is as fully responsible for his acts as a sober man, though he may have been so drunk as to be temporarily deprived of his reason and rendered incapable of knowing what he was doing, unless the fact of drunkenness negatives the existence of a specific intent or knowledge which is an essential ingredient of the particular offense charged."

The foregoing quotation from the general charge specifically covers the subject matter of this requested special charge. The requested special charge was, therefore, properly refused.

■ Bill of Exceptions No. 5 was reserved to the judge's refusal to grant the following special charge:

"The crime of armed robbery requires a specific intent to take something of value permanently by force or intimidation, through the use of a dangerous weapon."

The portions of the general charge we referred to and quoted in connection with Bill of Exceptions No. 3 amply cover this requested special charge, and it was, therefore, proper for the court to refuse the charge.

■ Bill of Exceptions No. 6 was reserved to the judge's refusal to grant the following special charge:

"The defendant does not have to offer any evidence in his defense, but the prosecution must prove that he committed all of the elements of the crime charged beyond a reasonable doubt to a moral certainty."

The general charge contained the following:

"The accused at the bar is presumed to be innocent until he is proven guilty.

The consequence of this rule of law is that he is not required to prove his innocence, but may rest upon the presumption in his favor until it is overthrown by positive, affirmative proof.

\*   \*   \*   \*   \*   \*

"The State has to prove every material allegation in the indictment and should the State fail to establish every ingredient necessary to conviction beyond a reasonable doubt, your sworn duty would be to acquit.

\*   \*   \*   \*   \*   \*

"This doubt must be a reasonable one, that is, one founded upon a real, tangible, substantial basis, and not upon a mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your minds by reason of the unsatisfactory character of the evidence; one that would make you feel that you had not an abiding conviction to a moral certainty as to the defendant's guilt. \*   \*   \*"

The matter contained in the requested charge, it may be seen, was given in the general charge, and it was proper for the trial judge to refuse the requested charge. Bill of Exceptions No. 6 is therefore without merit. La.Code Crim.P. art. 390 (1928).

██ Bill of Exceptions No. 7 requested that the judge charge the jury that "The

verdict of the Jury, either to acquit the defendant or to convict him must be by the unanimous vote of the entire jury." The trial judge refused to give this charge because it was not correct. We agree.

Article VII, Section 41, of the Louisiana Constitution provides that "cases, in which the punishment is necessarily at hard labor (are triable) by a jury of twelve, nine of whom must concur to render a verdict." The prosecution at bar is under Article 64 of the Louisiana Criminal Code which fixes the penalty for armed robbery at hard labor for not less than five nor more than ninety-nine years. This prosecution is, therefore, within those cases contemplated by the quoted provisions of Section 41 of Article VII of the Constitution.

In spite of the clear language of the Constitution and Article 64 of the Criminal Code, appellant argues "the simple hypothesis that armed robbery is a very serious crime and yet a person can be convicted as in the instant case when a 'reasonable doubt' may exist in the jury's mind \*   \*   \*." The theory being that since only nine jurors voted for conviction in this case, the three votes againt conviction demonstrate that a reasonable doubt of the guilt of the accused existed in the minds of the jury as a whole and, therefore, only a unanimous jury verdict can fulfill the requirements of due process. Federal cases are cited to support the view that the Federal

Constitution requires that a jury verdict must be unanimous in federal prosecutions.

These arguments do not impress us. We are entirely satisfied that the Constitution and laws of our state provide a system for this prosecution in which fundamental fairness and even-handed justice can be and was dispensed. All that the Sixth Amendment to the Federal Constitution requires is that,

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law * * *."

This amendment recently referred to trials in Federal tribunals and had no reference to jury trials under state law. Thompson v. State of Utah, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898).

Since the instant case was argued, however, the Federal Supreme Court decided Duncan v. State of Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 on May 20, 1968, in which it held " * * * that the right to jury trial in serious criminal cases is a fundamental right and hence must be recognized by the States as part of their obligation to extend due process of law to all persons within their jurisdiction." The court then declared that the Due Process Clause of the Fourteenth Amendment requires that the States accord the right to jury trial guaranteed by the Sixth Amendment in prosecutions for serious offenses.

The Duncan Case involved a prosecution for simple battery committed without a dangerous weapon. The accused was tried before a judge alone as required by the law of this state in such cases. La.Const. art. 7, § 41. He was convicted and sentenced to pay a fine of $150 and suffer imprisonment for sixty days. The statute which fixed the penalty for the offense, however, provided for a fine of not more than $300, or imprisonment for not more than two years.

In holding that the Duncan prosecution was a serious criminal case, the court declared that the denial of trial by jury was a denial of due process. We do not feel, therefore, that the decision imports that "all of the ancillary rules which have been or may hereafter be developed incidental to the right to jury trial in the federal courts" are thereby imposed upon the States. See concurring opinion of Justice Fortas.

Louisiana has accorded a jury trial to the accused in the instant case, and although the delay for applying for a rehearing has not yet expired, we do not feel the Duncan Case would compel us to abandon the provisions of Article VII, Section 41, of the Louisiana Constitution and require a unanimous verdict here. We must await a clear exposition of this point by the Federal Supreme Court before we can decide

whether a unanimous verdict is a requirement of the Sixth Amendment of the Federal Constitution which is obligatory on the States.

■ Bill of Exceptions No. 8 was reserved when the trial judge refused to give the following requested charge:

"If from the evidence submitted to you, it is possible to draw two reasonable conclusions, one of which supports the guilt of the accused, whereas the other supports conduct which is wholly innocent of any crime, then you are charged to return a verdict of not guilty."

The general charge contained the following:

"You are to be governed exclusively by the evidence and the law as heard by you in this court, and if, upon this, you find the accused guilty beyond a reasonable doubt, your duty is to so announce by your verdict; if on the other hand, any reasonable view of the evidence shows that the defendant is not guilty, or the evidence leaves a reasonable doubt of guilt, then, you should acquit."

The matter contained in the requested charge was covered in the general charge. Bill of Exceptions No. 8 is therefore without merit.

■ Bill of Exceptions No. 9 was reserved when the trial judge overruled a combined motion for a new trial and motion in arrest of judgment. The motion is based primarily upon the errors alleged in the bills of exceptions which we have considered and disposed of herein. The other issues raised in the motion were not presented by bills of exceptions and, since these issues do not involve errors patent on the face of the record, we cannot consider them.

■ Bill of Exceptions No. 10 was reserved during the trial when the State witness, Deputy Sheriff Andras, testified:

"* * * I was giving the description of Willie on the air. I would say around ten minutes after I had stopped Gilbert there I felt something hit me in the neck and I stood up and there was Willie with a gun and he snapped it three times at me."

The defense moved for a mistrial on the grounds that the defendant Gilbert Schoonover was under arrest and had cooperated with the police in furnishing the description of his brother. This, counsel argues, demonstrated an abandonment of any alleged conspiratorial intent or interest in the actions of his brother. The inference being, we understand from the argument, that the testimony was irrelevant, immaterial and prejudicial. The trial judge denied the motion for a mistrial.

The per curiam of the trial judge and the record disclose that it was necessary for two officers to subdue Gilbert by firing at

him. When Willie forced the officer to release Gilbert he attemped to kill the officer by firing at him three times, but the gun misfired. He and Gilbert then attempted to escape.

We quote with approval from the per curiam of the trial judge:

"A reading of the transcript of evidence taken upon the trial as epitomized in the opening statement of the Assistant District Attorney, and the Court's statement of facts, supports without doubt the theory of the State, that the Schoonover brothers contemplated and agreed between themselves to the robbery of these two service stations as one continuous unlawful act, and to use whatever violence which might be necessary to effectuate their purpose, and to secure their persons from apprehension by the officers of the law. Obviously, the robber, after having robbed his victim, does not intend to remain upon the scene of his crime to await his arrest. His resort to violence to secure his escape, as well as dominion over his spoils is part and parcel of his trade, even to the taking of human life." See, also, La.Code Crim.P. arts. 445, 446 and 447 (1928).

The actions of Willie Schoonover testified to by Deputy Andras were all part of one continuous robbery transaction in which both defendants were concerned. Each, therefore, was responsible for the acts of the other, until their joint enterprise was concluded.

The forcible release of Gilbert Schoonover by Willie Schoonover from the custody of Deputy Andras was part of the res gestae as well as the conspiracy entered into by both defendants. The bill is without merit.

Bill of Exceptions No. 11 was reserved during the trial when the Assistant District Attorney made an opening statement to the jury in which he described the charge against the defendant as armed robbery of Ernest G. Morgan while armed with a dangerous weapon as set forth in the bill of information. He described the armed robbery of one Margaritos Olivares by Willie Schoonover with an unidentified driver of the car, the kidnapping of Vincent Gulotta by Willie Schoonover after Gilbert Schoonover was in custody and the attempted murder of Deputy Andras.

The defense moved for a mistrial, asserting there was an inclusion in the opening statement of offenses not probative of the charge against the defendant, and that these statements were inflammatory and prejudicial, depriving defendant of a fair trial by "extending" the charge against him. The trial judge denied the motion.

The ruling of the trial judge was correct. All of the activities mentioned in the opening statement occurred in one continuous transaction. The reasons assigned by us to

Bill No. 10 are equally applicable to this bill.

The conviction and sentence are affirmed.

BARHAM, Justice (dissenting).

Gilbert Lee Schoonover was charged with armed robbery, tried, and convicted. That crime is defined by LSA–R.S. 14:64 as follows:

"Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."

LSA–R.S. 14:67 defines theft thus:

"Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations. *An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.*" (Emphasis here and elsewhere has been supplied.)

LSA–R.S. 14:10, "Criminal intent", provides:

"Criminal intent may be specific or general:

"(1) Specific criminal intent is that state of mind which exists when the cir-

cumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.

"(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act."

The defendant Schoonover requested written charges or instructions for the jury, and submitted to the court a special requested charge in the language of LSA–R.S. 14:10(1), which is a charge of specific criminal intent. The judge refused the requested charge, and the defendant reserved Bill of Exception No. 3. The judge's per curiam to this bill of exception states that the general charge fully covered the proof of intent, and that the special charge requested was covered by his instruction to the jury that " * * * an intent to permanently deprive the owner of his property, was an essential ingredient to the crime of robbery * * *". I believe that the trial court has committed reversible error in refusing to give the requested charge.

LSA–R.S. 14:11, "Criminal intent; how expressed", reads:

"The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes

consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms 'intent' and 'intentional' have reference to 'general criminal intent.' "

The reporter's comment thereunder correctly states the meaning of this statute:

"* * * However, in some crimes the production of certain consequences plus a specific intent to produce or accomplish some prescribed consequences is necessary (for example, 'Forgery is the false making or altering, with intent to defraud, of any signature * * *'). Such an intent is a 'specific intent.' "

Theft is an essential ingredient of armed robbery and must be charged in a trial for armed robbery. The use of force or intimidation while armed with a dangerous weapon is an entirely different offense in the absence of intent to commit theft. The definition of theft is qualified or modified by the clause: *"An intent* to deprive the *other permanently of whatever may* be the subject of the misappropriation or taking *is essential."* This intent is the "specific criminal intent" described in LSA–R.S. 14:10(1).

Our criminal statutes have defined the two grades of intent. A more onerous burden of proof is required of the State under specific intent. When specific intent is an essential ingredient or element of the crime charged, its existence is a question of fact which must be submitted to the jury. In these instances, in order to constitute guilt in the mind of a jury there must be not only a wrongful act but a specific criminal intent. We have defined by statute what constitutes that intent. It is the trial court's obligation to define specific intent for the jury when applicable, and it must include the charge when it is requested. Without the definition or instruction as to specific intent, the jury in the instant case determined guilt under a charge which used such general terms as "intent" and "intentional". The jury could have determined that "the circumstances indicate/d/ that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act". A verdict so predicated upon "general criminal intent" would be illegal, erroneous, and unjust. The defendant would have been adjudged guilty without the State being required to prove, and the jury to find, a specific criminal intent.

The defendant in his requested special charge submitted to the court a correct and complete statement of the law applicable to his case. That statement of the law is not contained in the charge given by the court. The requested charge is used throughout the State of Louisiana in the trial of criminal cases when specific intent is a necessary element of a crime. This court has

said repeatedly that if the requested charge is a correct statement of the applicable law and is not covered by the general charge, it must be given by the court. The requested charge offered by the defendant meets all the requirements of our law and jurisprudence, and I must therefore dissent from the majority since the failure to give this charge is reversible error.

Although this conclusion would dispose of the matter if I were writing the majority opinion, I feel compelled to express an opinion upon Bills of Exception Nos. 1 and 2 in this dissent.

These bills of exception were reserved during the voir dire examination of the jury when defense counsel objected to questions by the assistant district attorney in regard to certain laws which he contended were applicable to the case. The question involved in Bill of Exception No. 1 is: "Do you understand the rule of law, the law of principals as explained? * * *" Prior to this question the court had instructed the jury on the law of principals, and in the per curiam there is a full legal-size page of instructions in regard to principals which were rendered by the court to the jury during their voir dire examination. The instructions are similar to a charge to the jury. Certainly the court may be required to correct an erroneous statement of law and inform the jury that they must take the law from the court. The jury may be informed that the court will instruct them at the conclusion of the trial as to the law; but it is grave error, if not reversible error, for a court to instruct a jury in regard to principles of law during the voir dire examination. The court cannot at this stage of the proceeding know what law is applicable or correct. To quote law which would be inapplicable to the evidence when produced on the trial would confuse and confound a jury.

The instructions given here are more objectionable and censurable in light of the court's statement that:

"* * * I have instructed them in order that they [sic] might make the legal question understandable by lay persons, and *in order to do this I must use a factual situation as that involved in the trial * * *.*"

It may be inferred that this is a comment upon the expected evidence. It is reprehensible that a court would inject itself into the province of the jury to this extent.

Bill of Exception No. 2 was reserved when the court allowed the assistant district attorney to ask: "* * * Do you all understand the Judge's instructions with regard to what a conspiracy could be?" I agree with the majority that State v. Skinner, 251 La. 300, 204 So.2d 370 (on rehearing), holds that where the crime charged necessarily involves a conspiracy, it is proper for the judge to instruct the jury on the law of conspiracy even though conspiracy is not the crime charged. I disagree,

however, with the majority statement here that:

" * * * Evidence of a conspiracy would be relevant upon the trial, and *the ability to understand the somewhat complex problems which might arise under the law of conspiracy was essential to the juror's ability to act intelligently in the case;* therefore, there was no error in the ruling of the trial judge on this bill."

This court has held repeatedly that it is improper to inquire on voir dire examination whether the juror understands certain principles of law. State v. Perioux, 107 La. 601, 31 So. 1016; State v. Willie, 130 La. 454, 58 So. 147; State v. Webb, 156 La. 952, 101 So. 338; State v. Dreher, 166 La. 924, 118 So. 85. It is often pertinent to know whether a juror will accept and apply certain principles of law if they are charged him by the court. However, jurors should not be examined as to their understanding and opinions on questions of law, as jurors are not supposed to know the law and are not incompetent if their understanding and opinion do not coincide with the views of lawyers, jurists, and legal writers. Questions in respect to a juror's knowledge and understanding of the law should not be permitted on voir dire examination. Jurors are chosen for the very reason that they are lay people and, hopefully, form a peer group. They are not expected to be learned in the law, and their instruction in the law is to be delivered by the court at the end of

the trial during the formal charge to the jury. Neither counsel nor the court should instruct in the law on voir dire examination.

Since I need not determine whether these two bills of exception constitute reversible error or merely error which is not prejudicial, I make no judgment in that respect.

I respectfully dissent.

BARHAM, J., is of the opinion a rehearing should be granted.