BARHAM, Justice
(dissenting).
After the State had put on its evidence concerning the rape of the prosecuting witness by this defendant, it then presented evidence of other crimes allegedly committed by the defendant. The question of the admissibility of the evidence attempting to connect the defendant with other offenses is raised in several bills of exception.
My own finding of the facts shown by the evidence of these other acts is not wholly in accord with that of the majority, but these differences do not influence my view that the testimony and other evidence of these offenses, received over objection, are inadmissible in this prosecution for aggravated rape.
In one of these other incidents, the State offered evidence that a man entered the bedroom of a seven-year-old girl in the nighttime and removed part of her clothing. A wallet and some papers left at the scene connected the defendant with this offense.
In another incident, the bedroom of a young lady named Biondo was entered in the nighttime by a man who threatened to kill her and offered her money to have sexual intercourse with him but who fled *463 ■when’ slie threatened to scream. She was "not able to identify the defendant as this intruder. In an attempt to link this offense to the defendant, the State intro-duced in evidence a jacket, stolen from the Biondo house in a burglary several weeks later, which was discovered in the defendant’s home.
I have dissented before from this court’s 'extension of the rule which permits the próóf of other offenses in order to establish knowledge, intent, and purpose. My concern in State v. Crook, 253 La. 961, 221 So.2d 473, was replaced with consternation in State v. Bolden, 257 La. 60, 241 So.2d 490, • where the majority held admissible to show present intent evidence of a rape two years before the offense charged. My concern and consternation have turned into dismay at the majority’s broad, sweeping language here of what the law is in respect to intent in the State of Louisiana.
In the knowledge, intent, and purpose cases the court has repeatedly noted that R.S. 15:444 states that some offenses are crimes by reason of violation of the statute, and that no further proof of intent is required than that the accused voluntarily. did the act. It has noted repeatedly that where specific intent, guilty knowledge, or scienter is an essential ingredient Of the crime, under R.S. 15:445 and 446 prior and subsequent offenses may be used in order to prove this necessary and essential ingredient, intent or guilty knowledge. Here in order to admit evidence of other offenses the court has said that every crime defined by any statute requires proof of intent. What the majority overlooks is that if the State can use other crimes to prove intent, intent has been made an essential element of every crime; that in the future the State is burdened with the obligation, in every prosecution under any statute, of proving intent even when intent is obviously not an essential ingredient of the crime.
Title 15 of the Revised Statutes, Chapter 2, Evidence, Part 4, Knowledge and Intent, consists of three sections: R.S. 15 :444, 445, and 446. The majority has taken R.S. 15 :- 445 out of context, but even out of context it does not justify the finding made. But when it is read in context with the preceding and following sections, the purpose of the Legislature in regard to proof of knowledge and intent is clear and is not in accord with the finding made by the majority. The following statement of law from the majority opinion is erroneous. Moreover, the consequences to and the effect upon criminal justice which will result if this is to be accepted as a correct statement of law are catastrophic. Read carefully:
“ * * * The intent which is pertinent here is general criminal intent which exists ‘when the circumstances indicate that *465 the offender, in the ordinary course of human experience must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.’ It is distinguished from specific intent in that specific intent requires proof that the consequence was intended; whereas, in crimes where no specific intent is required it is only necessary to prove the ‘act’ was intended.
“Intent, therefore, is a revelant consideration in any ‘act’ producing ‘criminal consequences,’ even though there was no specific intent that criminal consequences would follow. * * * ”
After quoting R.S. 15:441 and 445, the majority goes on: “* * * This authority permits, as the trial judge ruled, the activity of this accused involving the seven-year-old girl and the Biondo teenager to be shown in order to dispel any inference that his actions with the victim Janice Wallace were not his voluntary acts —that is, similar acts were relevant to show the accused was no stranger to such actions and was, therefore, not forced into the main action, or insensible of its occurrence. In short, the similar occurrences help to establish that the ‘act’ complained of was willed or intended. Added to this is the legal presumption which our law supports that the defendant intended the natural and probable consequences of his act. La.R.S. 15:432. Evidence to support this presumption of intent is also relevant. See La.R.S. 15.441.”
It is apparent that there is a difference of opinion as to the distinction between specific and general intent. I hold the view that it is a most important considera-, tion in numerous criminal trial determinations to clearly define and differentiate the two grades of intent. The majority’s conclusion here that general intent is the intent anticipated by R.S. 15:446 leads to what I believe is error. See dissent in State v. Schoonover, 252 La. 311, 211 So.2d 273; see R.S. 14:8, 9, 10, and 11.
Prior to the holding in this case the majority of this court (although it has never been stated in opinions) has rationalized from the bench in argument that the intent required by the responsive verdict “attempted aggravated rape” supplied the ingredient of specific intent which allowed evidence of other offenses in aggravated rape cases. Now the majority has discarded the absolute requirement in the law (R.S. 15 446) that intent be an essential ingredient of the crime before other offenses may be used to establish intent',- by saying that every offense named by the State of Louisiana makes intent an essential ingredient.
While I remain convinced of the errors of overextension of the lc.i.p. exception, and skeptical of the rule laid down by this *467 court in the face of our positive statutory law, I said in State v. Spencer, 257 La. 672, 243 So.2d 793 (armed robbery), that I would accept the majority view in order to become an effective organ of this court. I am the author of a majority opinion, handed down today, in which the court upholds the admission in a prosecution for aggravated rape of evidence of a prior attempted rape and a subsequent rape. See State v. Smith, 259 La. 515, 250 So.2d 724. I was able to write the opinion by applying what I believed to be the majority view (although I personally hold a contrary view) that where attempt to commit the crime is a responsive verdict, intent is an essential ingredient of the actual offense charged. I could not have written that decision if I had believed the statement presented in this opinion represents the majority view of the court on the intent requirement.
Here the legal reasoning for the majority’s holding in this particular is erroneous. Moreover, even though I may accept the proposition that evidence of other “similar” acts or offenses is admissible to show intent, it is my opinion that the evidence of the other offenses in the instant case is inadmissible. The first offense (that connected with the seven-year-old girl) cannot be considered a similar offense because there was no likeness in the method used, the approach made, or the; act i engaged in. It could be considered similar only to the extent that it, like the aggravated rape for which the defendant was being tried, was sexually motivated; but sexual motivation could not supply the intent to commit aggravated rape if intent were essential. Evidence of the second offense (the intrusion into the Biondo home for sexual purposes) is totally irrelevant here because no connection was ever established between this offense and the defendant. The fact that a connection was shown between the defendant and an article of clothing stolen from this house several weeks later does not link the defendant to the earlier intrusion into this home. Moreover, no evidence of the burglary with which this coat was connected was admissible on the trial of this defendant for rape, for that burglary involving a theft is not an act or offense similar to rape or one that would supply intent to commit rape.
The admissibility of all the evidence surrounding the events connected with the Biondo house has never been questioned by the majority on the important bases of no identification of defendant with the first intrusion and total lack of similarity of the second intrusion, the burglary. A correct holding in this regard would pretermit a consideration of the next bill.
Defendant’s Bill of Exception No. 9 points up cogently my previous concern that if evidence of other offenses is ad *469 missible to prove knowledge, intent, and purpose in a particular prosecution, due process would require prior notice to the defendant of intention to use such evidence so that he could adequately prepare his defense. This bill addresses itself to the lack of a search warrant — not in obtaining evidence for the present prosecution, but rather in obtaining evidence in one of the other alleged offenses. Naturally the defendant could not and did not file a motion to suppress the evidence, which was not connected with the crime for which he was to be tried and which he had no notice would be introduced. The majority, citing Code of Criminal Procedure Article 703, notes that a motion to suppress was not made prior to trial, and that no argument was made that defendant was unaware of the allegedly unconstitutional search and seizure until the trial was in progress. The defendant may, as the majority suggests, have been aware that the jacket was unconstitutionally seized, but he could not have been aware that it would be used in evidence against him on his trial for aggravated rape of a woman who had not the remotest connection with the Biondo house. I certainly hope that we are not going to hold that defendant and counsel are presumed to know the State intends to use evidence which has been seized in investigation of other crimes. The defendant through counsel repeatedly objected to the introduction of the peacoat in evidence, and these objections and the reserved bill of exception before the jury are sufficient here to preserve his right to challenge the constitutionality of the seizure.
The majority then says that there is doubt that “we should overrule the trial judge on his fact determination that a search warrant had issued and was lost”. The trial judge did not rule that a search warrant had issued and been lost; he refused to rule. All of the testimony on this issue and the colloquy between counsel and the court were heard in the presence of the jury, and the judge absolutely abdicated his judicial obligation under Code of Criminal Procedure Article 703 to determine the constitutionality of the search and seizure. To the contrary, he left that “judge” question for a determination by the jury, and devoted almost two pages of his charge to the jury to a statement of the law in connection with search warrants and the use of parol evidence to prove a lost instrument.
Next the majority says there is doubt of the validity of this bill because the constitutionality of the seized evidence was not raised when the pea jacket had previously been identified in connection with the Biondo daughter’s testimony. The defendant was not upon notice that the State intended to use evidence of a totally unrelated offense; he was not on notice that the evidence might have been the subject *471 of an unconstitutional search and seizure, and he could not have discovered this through a pre-trial motion to suppress evidence in connection with the accusation for which he was tried. In order that there may be compliance with the procedures delineated under Code of Criminal Procedure Article 703 when the State intends to use evidence of prior and subsequent offenses of a similar nature to establish lci.p., the due process requirement of notice which I have repeatedly proposed is most essential. I urge this court to set the appropriate guidelines for the offering of such evidence. See State v. Spreigl, 272 Minn. 488, 139 N.W.2d 167; State v. Billstrom, 276 Minn. 174, 149 N.W.2d 281.
The majority has said that if it were error to introduce evidence that the jacket was found in defendant’s home, this was harmless error. I will not here repeat my previously stated strong convictions about this court’s attempt to apply the federal harmless error rule in Louisiana. See my dissents in State v. Hopper, 253 La. 439, 218 So.2d 551, and State v. Anderson, 254 La. 1107, 229 So.2d 329, and my concurrences in State v. McGregor, 257 La. 956, 244 So.2d 846, and State v. Mixon, 258 La. 835, 248 So.2d 307.
In addition to the objections already expressed in those opinions, I must state that in this decision the majority has found that intent is an essential element of the crime, and that introduction of evidence of other offenses was a means of proving that element. The evidence of the other offenses, including the peacoat (if not inadmissible for other reasons), could have been admissible only to establish k.i.p. The majority does not find in its review for harmless error that intent was established by any other testimony or evidence. The peacoat could not establish the defendant’s guilt; it could establish, even under the majority’s holding, only one element of all the elements that had to be proved in order to constitute his guilt of the crime charged.
If harmless error can be determined in the face of the constitutional violation before us and upon a consideration of the record as the majority would view it, then the majority must find that other evidence overwhelmingly establishes the necessary ingredient intent. The majority’s finding that the record is replete with identification of the defendant is totally irrelevant to a consideration of whether the peacoat had any effect upon the jury in finding the majority’s requisite intent.
I respectfully dissent.