282 So.2d 491 (1973)
STATE of Louisiana
v.
Billy J. TAYLOR.
No. 52844.
Supreme Court of Louisiana.
January 15, 1973.
On Rehearing August 20, 1973.
*492 William McM. King, Covington, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Max Mercer, Asst. Dist. Atty., for plaintiff-appellee.
HAMLIN, Chief Justice:
Defendant appeals from his conviction and sentence to death for the crime of aggravated kidnapping, LSA-R.S. 14:44.[1]
*493 During the course of the proceedings a number of bills of exceptions were reserved, some of which are not now urged for our consideration. Defense counsel sets forth in his brief a specification of errors; the bills of exceptions which we shall consider fall under the following errors assigned:

"1
"The trial judge erred in upholding the prosecutor's challenges for cause of prospective jurors who expressed scruples against capital punishment.

"2
"The trial judge erred in overruling the objections of the defendant to the prosecutor's questioning of prospective jurors regarding their reaction to evidence of aggravated rape and armed robbery which he anticipated proving during the trial.

"3
"The trial judge erred in denying defendant's challenge for cause of prospective juror who had been for at least ten years a close friend and immediate neighbor to the persons injured by the alleged crime and their family.

"4
"The trial judge erred in upholding the prosecutor's objection to the introduction by defendant of the certified records of the Charity Hospital in New Orleans and East Louisiana Hospital in Jackson pertaining to defendant.

"5
"The trial judge erred in denying defendant's motion to quash the petit jury venire on the grounds that it systematically excluded women therefrom.

"6
"The trial judge erred in denying defendant's motions in arrest of judgment and for a new trial on the grounds that the imposition and carrying out of the sentence of death constitutes cruel and unusual punishment."
BILL OF EXCEPTIONS NO. 1
This bill of exceptions has been abandoned.
BILL OF EXCEPTIONS NO. 2
This bill of exceptions has been abandoned.
BILL OF EXCEPTIONS NO. 3
Bill of Exceptions No. 3 was reserved to the ruling of the trial judge which upheld the State's challenges for cause, over the objection of defense counsel, of certain enumerated jurors who expressed their opposition to capital punishment.
The issue raised in this bill is now moot because of the ruling of the United Stated Supreme Court with respect to the death sentence in the case of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346.
BILLS OF EXCEPTIONS NOS. 4 AND 5
Bills of Exceptions Nos. 4 and 5 were reserved when the trial judge overruled defense counsel's objections to the following questions propounded by the State to prospective jurors Camille H. Zeringue and Kenneth T. Erickson:
"In other words, let me pose a hypothetical situation. If you were sitting on a jury and the State proved beyond a reasonable doubt to your satisfaction that a defendant, *494 whose guilt or innocence you must decide, had kidnapped a lady, two ladies and a child, and during the course of that kidnapping had robbed them of their money at the point of a knife, and during the course of that kidnapping had in fact at the point of a knife committed the crime of aggravated rape, if you are satisfied with the evidence and the circumstances surrounding it in that factual situation, could you render an opinion of guilty as charged?" (The above question was propounded to prospective juror Zeringue.)
"Then if you are satisfied in the trial of the situation where the State presented it to you a kidnapping case which involves not only kidnapping but the facts and circumstances showed, during the course of the trial, that during the kidnapping the Defendant committed the crime of aggravated rape upon one of the victims and at the same time robbed them of their money before they were liberated, then you could return a verdict of guilty in that possible situation?" (The above question was propounded to prospective juror Erickson.)
Defense counsel contends that in effect the district attorney by means of the above questioning was trying to commit the prospective jurors' vote in advance. He argues that such questioning does not advance the legitimate goal of testing possible bias, and it is clearly improper.
An examination of the record reveals that neither Camille H. Zeringue nor Kenneth T. Erickson served as jurors in this prosecution. Although the trial court overruled defense counsel's objections to the above propounded questions, he excused both prospective jurors from service. Under such circumstances, we find that the defendant suffered no prejudice, and there is no need for us to pass on his counsel's contentions.
Bills of Exceptions Nos. 4 and 5 are without merit.
BILL OF EXCEPTIONS NO. 6
This bill of exceptions has been abandoned.
BILL OF EXCEPTIONS NO. 7
This bill of exceptions has been abandoned.
BILL OF EXCEPTIONS NO. 8
Bill of Exceptions No. 8 was reserved to the ruling of the trial judge which denied defense counsel's challenge for cause of prospective juror Warren Martin on the ground that he had been for the ten years preceding trial a close friend of the victims of the crime and their family, and for that length of time lived across the street from them.
Defense counsel contends that the trial judge committed gross error in denying his challenge for cause, Art. 797, LSA-C.Cr. P., and that it is impossible to imagine that Martin would have been uninfluenced by his relationship.
An examination of the record reveals that prospective juror Warren Martin did not serve as a juror in this prosecution. Although defense counsel challenged the prospective juror for cause, he has not shown that defendant suffered any prejudice from an exhaustion of peremptory challenges. The record discloses that after, defense counsel reserved a bill of exceptions to the instant ruling, the trial court immediately excused prospective juror Martin. Under such circumstances, defendant suffered no prejudice, and there is no need for us to pass upon his counsel's contentions.
Bill of Exceptions No. 8 is without merit.
BILL OF EXCEPTIONS NO. 9
Bill of Exceptions No. 9 was reserved when the trial judge refused to allow the introduction and filing in evidence in globo of the certified records of Charity Hospital in New Orleans and East Louisiana Hospital in Jackson, said records pertaining to the condition of the defendant.
Defense counsel contends that the trial judge clearly erred in not following the *495 plain provisions of LSA-R.S. 13:3714 and not considering that the statute was an exception to the hearsay rule. He urges that the error substantially affected defendant inasmuch as defendant pleaded not guilty by reason of insanity, and the records sought to be admitted related to that defense.
LSA-R.S. 13:3714 provides:
"Whenever a certified copy of the chart or record of any hospital in this state, signed by the director, assistant director, superintendent or secretary-treasurer of the board of administrators of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination."
Defendant pleaded not guilty by reason of insanity at the time of the commission of the offense and present incapacity. A lunacy commission was appointed, and a lunacy hearing was held on defendant's plea of present incapacity to proceed. The plea was denied, the trial judge stating: "I realize you have medical records out, but for the record you can complete the record, the Court at this time is going to rule the man is really sane and able to assist. I have no evidence that would change my mind." [2]
The plea of not guilty by reason of insanity at the time of the commission of the offense was a matter for the jury to decide. Defense counsel attempted to offer the hospital records for the purpose of substantiating the plea. The State argued:
"Your Honor, first of all, the medical records in a criminal case themselves constitute an opinion or medical testimony as general, and opinion of a medical except general, a doctor, as to the condition of a person's mind.
"Second of all, the best evidence is the doctor himself.
"In the third place, with regard to the records themselves, they are run through with hearsay evidence. They are run through with evidence that is self-serving in that many times the statements of the patient, many times letters, writings, or many kinds of documents are contained, and it is absolutely improper for all totally hearsay records to be introduced in a criminal case.
"If the doctor accepts the medical record as valid and forms an opinion based upon it, without telling where he got his information, if that is satisfied, then he can give his opinion. But certainly the jury nor the Court should be burdened with all the hearsay that is introduced into the record, and it is not admissible."
As stated supra, the trial judge refused to admit defendant's hospital records in evidence in globo; the following colloquy took place between him and defense counsel:
"BY THE COURT:
"Mr. King, I am inclined to agree with the State on this. We have reams of records out there, and you could have a doctor examine this man and have a possible diagnosis such as this doctor has done which could possibly be changed at a later *496 date by another doctor or by this doctor himself.
"BY MR. KING:
"I realize that.
"BY THE COURT:
"And I am just reluctant to let all this come in and burden this jury, should they decide to look at all the documents in this case and go into that record.
"I'm sure the only one competent to testify out of that record is the doctor that is on the stand now or possibly other doctors that you might have.
"BY MR. KING:
"I realize that, and I realize sincerely what Mr. Mercer said.
"BY THE COURT:
"I will do this. I am not going to allow you to introduce that whole record. You can let this doctor or any other doctors examine the record and testify as to their opinion, as to what's contained therein, and they can use that as a basis for their opinions.
"BY MR. KING:
"Your Honor, if I did that, I would have to subpoena one hundred different people, and I can't do that.
"BY THE COURT:
"But what I am telling you, Mr. King, is I believe you could do this: that this doctor has testified already that he has examined this record and has gone over this record with the Defendant.
"Now, if you have any questions that you would like to ask this doctor based on the facts brought out in that record, then I am willing to let you examine him about that.
"BY MR. KING:
"Very well.
"BY THE COURT:
"As long as he testifies in this Court that, based on the information he has obtained from the Defendant himself or from the record that he can give his opinion.
"BY MR. KING:
"I have finished with Doctor DeVillier, as far as his questioning, but I do believe that the law is very clear on my being able to introduce this, since there is no objection to its proper certification, and I will reserve, of course, a Bill to that."
We have read the forensic letters and reports concerning the defendant which were submitted on the question of present insanity. They are complicated and involved; we agree with the trial judge that any hospital records concerning the defendant would be detailed and voluminous. We also agree with the trial judge that a person's condition is subject to change, and a record reflecting a condition at one time would not necessarily reflect a condition at a later date.
In the case of State v. O'Brien, 255 La. 704, 232 So.2d 484, we held that the right conferred under LSA-R.S. 13:3714 was to be regarded as an exception to the hearsay rule; and that the statute did not violate a person's right of confrontation. However, under the facts and circumstances of this case, we do not think that hearsay is our concern. Three doctors testified as to their evaluations of the defendant; they also testified as to the dates of such evaluations; they were allowed to refer to hospital records if they chose to do so. This testimony was heard by the jury; it considered this expert testimony in considering the plea of not guilty by reason of insanity at the time of the commission of the offense. We therefore conclude that the trial judge did not abuse his discretion or commit prejudicial reversible error in not allowing defense counsel to introduce in evidence in globo voluminous hospital records covering a great number of confinements of defendant in the State's hospitals. Under the instant facts and circumstances, *497 the medical testimony was the best evidence. LSA-R.S. 15:436.
Bill of Exceptions No. 9 is without merit.
BILL OF EXCEPTIONS NO. 10
Bill of Exceptions No. 10 was reserved to the trial judge's denial of defense counsel's motion to quash the petit jury venire, such motion being grounded on the fact that women were systematically excluded from the petit jury venire.
Counsel urges that the absolute exemption provided by Louisiana is present in no other state. He says that it is not reasonable to expect volunteers for jury service, and jury selection cannot be constitutionally grounded upon a voluntary procedure for one sex.
The matter urged in this bill has been considered by this Court many times, and each time that we have considered the contention, we have held that our law, which permits the calling for jury service only those women who have filed with the clerk of court a written declaration of their desire to be subject to jury service is neither irrational nor discriminatory. See, State v. Daniels, 262 La. 475, 263 So.2d 859 (1972); State v. Curry, 262 La. 280, 263 So.2d 36 (1972); State v. Millsap, 258 La. 883, 248 So.2d 324 (1971); State v. Pratt, 255 La. 919, 233 So.2d 883 (1970); State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968).
The contentions urged by defense counsel have been considered by the United States Supreme Court in the case of Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961) and determined adversely to defendant. The Court stated at pp. 162 and 163 of 82 S.Ct. that:
"In neither respect can we conclude that Florida's statute is not `based on some reasonable classification,' and that is thus infected with unconstitutionality. Despite the enlightened emancipation of women from the restrictions and protections of bygone years, and their entry into many parts of community life formerly considered to be reserved to men, woman is still regarded as the center of home and family life. We cannot say that it is constitutionally impermissible for a State, acting in pursuit of the general welfare, to conclude that a woman should be relieved from the civic duty of jury service unless she herself determines that such service is consistent with her own special responsibilities.
"Florida is not alone in so concluding. Women are now eligible for jury service in all but three States of the Union. Of the forty-seven States where women are eligible, seventeen besides Florida, as well as the District of Columbia, have accorded women an absolute exemption based solely on their sex, exercisable in one form or another. In two of these States, as in Florida, the exemption is automatic, unless a woman volunteers for such service. * * *" Cf. Eslinger v. Thomas, D.C., 340 F.Supp. 886 (1972).
We conclude that under the jurisprudence of this Court and the above ruling of the United States Supreme Court, Art. VII, Sec. 41, La.Const. of 1921, and Art. 402, LSA-C.Cr.P. are constitutional.
Defendant has shown no prejudice. He has offered no evidence of purposeful exclusion of women from the instant grand jury and petit jury; he has made no showing that the present law was not followed. Under such circumstances, we find no error in the ruling of the trial judge.
BILL OF EXCEPTIONS NO. 11
Bill of Exceptions No. 11 was reserved when the trial judge denied defense counsel's motions in arrest of judgment and for a new trial.
The motion for a new trial presents nothing new for our consideration. Matters urged were considered in our determination *498 of the bills of exceptions presented supra.
The motion in arrest of judgment attacks the imposition of the death penalty as cruel and unusual punishment.
At the present time, the mandate of the United States Supreme Court in the case of Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346 (1972), requires the imposition of a sentence other than death. The motion in arrest of judgment is therefore with merit insofar as it attacks the death penalty imposed upon defendant.
For the reasons assigned, the conviction is affirmed; the death sentence imposed upon defendant is annulled and set aside, and the case is remanded to the Twenty-Second Judicial District Court with instructions to the trial judge to sentence the defendant to life imprisonment.
DIXON, J., dissents as to Bill $9.
TATE, Justice (concurring).
As to Bill No. 9, I concur in result only. As I read the record, the defendant was not denied the right to introduce relevant parts of the Charity Hospital record.
BARHAM, Justice (dissenting).

Bill of Exceptions No. 10.
The defendant moved to quash the petit jury venire as being improperly drawn, selected, and constituted since women were systematically excluded. I am of the opinion that Code of Criminal Procedure Article 402 and Louisiana Constitution Article VII, Section 41, which exempt women from jury service violate the Fourteenth and Sixth Amendments to the United States Constitution, and that therefore the motion to quash the venire was good. See Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972).

Bills of Exceptions Nos. 4 and 5.
The State was allowed to propound and receive answers of commitment or prejudgment to the following questions to two prospective jurors. To prospective juror Zeringue: "In other words, let me pose a hypothetical situation. If you were sitting on a jury and the State proved beyond a reasonable doubt to your satisfaction that a defendant, whose guilt or innocence you must decide, had kidnapped a lady, two ladies and a child, and during the course of that kidnapping had robbed them of their money at the point of a knife, and during the course of that kidnapping had in fact at the point of a knife committed the crime of aggravated rape, if you are satisfied with the evidence and the circumstances surrounding it in that factual situation, could you render an opinion of guilty as charged?" (Emphasis here and elsewhere supplied.) To prospective juror Erickson: "Then if you are satisfied in the trial of the situation where the State presented it to you a kidnapping case which involves not only kidnapping but the facts and circumstances showed, during the course of the trial, that during the kidnapping the Defendant committed the crime of aggravated rape upon one of the victims and at the same time robbed them of their money before they were liberated, then you could return a verdict of guilty in that possible situation?"
This court, in a series of recent cases which I believe to be erroneous, has repeatedly refused defendants the right on voir dire examination to examine a juror for prejudice as to certain laws and rules of evidence. State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); State v. Sheppard, 263 La. 379, 268 So.2d 590 (1972); State v. Crittle, 263 La. 418, 268 So.2d 604 (1972); State v. Bell, 263 La. 434, 268 So. 2d 610 (1972). I cautioned in dissent that the court was applying one rule of law to defendants' voir dire examination of prospective jurors and another rule of law to the State's voir dire examination. See dissent in State v. Richey, supra, and the cases there cited: State v. Frier, 45 La.Ann. 1434, 14 So. 296; State v. Barker, 46 La. Ann. 798, 15 So. 98; State v. Stephens, 116 La. 36, 40 So. 523.
*499 In the case at hand we again apply a harsh standard to the defendant and a lenient standard to the State when voir dire examination involves hypothetical questions by the State calling for pre-judgment of the guilt or innocence of the defendant. State v. Richey, supra, cited State v. Smith, 216 La. 1041, 45 So.2d 617, from which it quoted the following language: "Moreover, hypothetical questions and questions of law are not permitted in the examination of jurors which call for a pre-judgment of any supposed case on the facts." See also State v. Henry, 197 La. 999, 3 So.2d 104. In State v. Smith and State v. Henry the convictions were reversed because the State had been allowed to ask hypothetical questions which called for pre-commitment by the jurors. In Smith, which was a trial for murder, this court held the following questions propounded by the State to prospective jurors to be improper, prejudicial, and reversible error: "You would not inflict capital punishment, even if he raped your own daughter?" Do you have conscientious scruples against capital punishment "even in the case of rape"?
In Henry the State's questions which were found to constitute reversible error were designed to commit the jurors in advance to reach a certain verdict if the testimony convinced them that the accused was guilty of the crime of murder. The court held that although the State was entitled to determine whether a juror could render a verdict which would carry the death penalty, it was highly improper to ask jurors "whether under like circumstances they would render such a verdict".
In State v. Scott, 198 La. 162, 3 So.2d 545, and in State v. Plummer, 153 La. 730, 96 So. 548, the court applied the same rule of law to the defendants, affirming the convictions where defendants were refused permission to determine from jurors the verdicts which would be returned under certain circumstances. In all of these cases a correct rule of law was enunciated and applied evenhandedly to the accused and to the State.
A casual observation of the questions posed to the prospective jurors Zeringue and Erickson in this case must lead one to conclude that they are far more improper and prejudicial than the questioning condemned in Smith, Henry, Scott, and Plummer. The first question is prefaced with the remark that it is a hypothet. It projects a possible set of facts and asks for an opinion of guilt under those facts. The second question also poses an assumed set of facts and asks for a commitment as to verdict "in that possible situation". Such questioning is to be condemned whether by the State or by the defendant. It is improper voir dire examination. Undeviatingly we have held it to be so. Even in the recent cases with which I disagree, the rule of law was reannounced that hypothetical questions calling for commitment to verdict are improper.
The majority says it will not pass upon counsel's contentions that the overruling of the objections to such questioning was reversible error since neither of the jurors served in the trial. Where the majority errs, and badly, is in finding that the court excused these jurors from service. These jurors did not serve because defense counsel peremptorily challenged both of them.
Code of Criminal Procedure Article 800, which requires the exhaustion of peremptory challenges before the defendant can question rulings on challenges for cause, is inapplicable to the case at hand, which does not involve challenge for cause. See dissent in State v. Cormier, La., 272 So. 2d 686, decided January 9, 1972. But even if Article 800 were sought as a tool for denying this defendant review of the issue presented, it would avail nothing here, for the defendant did exhaust all of his peremptory challenges. Our Article 800 purposely overruled State v. Breedlove, 199 La. 965, 7 So.2d 221 (1942), which required that a defendant who had exhausted *500 his peremptory challenges must in addition show that he was forced to accept an obnoxious juror before a ruling on challenge for cause could be examined on review. See Official Revision Comment to that article.
Here the defendant was forced to challenge two jurors who had committed themselves to verdicts of guilty before hearing the evidence under assumed statements of facts given them by the State. The defendant was forced to exercise peremptory challenges to rid the jury of two jurors who had prejudged the case; he exhausted his other challenges; he was prejudiced. Specifically, under State v. Smith and State v. Henry, both cited above, as well as under the other jurisprudence, the defendant here is entitled to a reversal.
I respectfully dissent.

ON REHEARING
SANDERS, Chief Justice.
We granted a rehearing in this matter to reconsider Bills of Exceptions Nos. 4, 5, 8 and 9, which raise substantial legal questions relating to the validity of the conviction.
The Grand Jury of St. Tammany Parish indicted Billy J. Taylor for aggravated kidnapping in violation of LSA-R.S. 14:44. The State's theory of the case was that Taylor, while armed with a butcher knife, approached an automobile occupied by Mrs. Louise Willie, her daughter, and grandson. By threatening them, he forced Mrs. Willie to drive him from the City of Covington to an abandoned road near Mandeville. There he raped her. He released the victims only after he had taken their money and they had promised not to report the incident to the law enforcement officers.
Bills of Exceptions Nos. 4 and 5 were reserved when the trial judge overruled defense objections to the State's questions to two jurors on voir dire examination. The first question was directed to prospective juror Camille H. Zeringue as follows:
"In other words, let me pose a hypothetical situation. If you were sitting on a jury and the State proved beyond a reasonable doubt to your satisfaction that a defendant, whose guilt or innocence you must decide, had kidnapped a lady, two ladies and a child, and during the course of that kidnapping had robbed them of their money at the point of a knife, and during the course of that kidnapping had in fact at the point of a knife committed the crime of aggravated rape, if you are satisfied with the evidence and the circumstances surrounding it in that factual situation, could you render an opinion of guilty as charged?" (Italics ours).
The next question was addressed to prospective juror Kenneth T. Erickson as follows:
"Then if you are satisfied in the trial of the situation where the State presented it to you a kidnapping case which involves not only kidnapping but the facts and circumstances showed, during the course of the trial, that during the kidnapping the Defendant committed the crime of aggravated rape upon one of the victims and at the same time robbed them of their money before they were liberated, then you could return a verdict of guilty in that possible situation?" (Italics ours).
The record reflects that neither prospective juror served at the trial, both being the subject of a peremptory challenge by the defense.
The defense contends that the questions were improper since they committed the prospective juror's vote in advance of the hearing of evidence.
It is, of course, improper to ask a prospective juror what his verdict would be on an assumed state of facts. Such a question *501 seeks to commit the juror to a specific verdict in advance of trial. State v. Plummer, 153 La. 730, 96 So. 548 (1923); State v. Henry, 197 La. 999, 3 So.2d 104 (1941); 5 Wharton's Criminal Law and Procedure (Anderson 1957), § 1996, pp. 130-131.
The question addressed to the prospective jurors here, however, was not whether they would return a specific verdict but whether, if the crime was proved, they could return a verdict of guilty. Such a question seeks no commitment but tests the impartiality of the juror. See LSA-C.Cr.P. art. 797.
In State v. Henry, supra, this distinction is made:
"If the district attorney had gone no further than to ask the veniremen whether, in case they were convinced from the evidence that the accused was guilty of the charge brought against her, they could render a verdict which would carry with it the death penalty without offending their conscience, defendant's complaint would have no merit. But it was highly improper for him to go further and ask them whether under like circumstances they would render such a verdict. By answering that question in the affirmative, as each of the jurors did, according to the record, the jurors, in effect, committed themselves in advance to the proposition that, if after hearing the evidence they were convinced that the defendant was guilty of the crime of murder and if in their opinion there were no mitigating circumstances entitling her to a qualified verdict, `or mercy', they would render a verdict carrying with it capital punishment."
See also State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964).
The use of the word "could" in voir dire questions similar to this has been criticized as lacking clarity. See State v. Weston, 232 La. 766, 95 So.2d 305 (1957), upholding the denial of a challenge for cause of the juror who answered the question. Nonetheless, in the usage of this voir dire examination, it conveys this meaning; If the State establishes the guilt of the defendant "beyond a reasonable doubt to your satisfaction", will your state of mind permit you to return a verdict of guilty in accordance with the evidence?
The trial judge is vested with broad discretion in regulating the voir dire examination of prospective jurors. State v. Coleman, 260 La. 897, 257 So.2d 652 (1972); State v. Harper, 260 La. 715, 257 So.2d 381 (1972); State v. Schoonover, 252 La. 311, 211 So.2d 273 (1968), cert. den. 394 U.S. 931, 89 S.Ct. 1199, 22 L.Ed.2d 460; State v. Green, 244 La. 80, 150 So.2d 571 (1963). His position at the trial permits him to promptly discern any misunderstanding of questions on the part of a prospective juror. In our opinion, the State's questions are well within that discretion.
Assuming arguendo that the questions were improper as tending to commit the jurors in advance, as contended by defendant, no prejudice to the defendant resulted. See LSA-C.Cr.P. art. 921; State v. Dreher, 166 La. 924, 118 So. 85 (1928), cert, den. 278 U.S. 641, 49 S.Ct. 36, 73 L.Ed. 556.
As noted in the majority opinion on original hearing, these two prospective jurors did not serve on the trial jury. No question addressed to them could have affected the verdict. See Henwood v. People (Colo.), 143 P. 373 (1914); 47 Am.Jur.2d, Jury, § 202, p. 792.
We conclude the bills of exceptions lack merit.
Bill of Exceptions No. 8 was reserved after the trial judge denied the defendant's challenge for cause of prospective juror Warren Martin, on the ground that he was a friend of the victims.
The defendant excused the juror with a peremptory challenge.
*502 Article 797 of the Louisiana Code of Criminal Procedure provides:
"The state or the defendant may challenge a juror for cause on the ground that:
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict; * * *"
Under the above provision, the test of a challenge for cause is whether the relationship of the prospective juror with the victims is such that it is reasonable to conclude that the relationship would influence him in arriving at a verdict and thus cause him to be biased against the defendant.
The trial court must determine from the voir dire examination, as a whole, whether the juror's state of mind is such that it is reasonable to conclude that he would be unable to render impartial justice in the case. See State v. Atwood, 210 La. 537, 27 So.2d 324 (1946).
The prospective juror was a neighbor of both the defendant, Taylor, and of the victims. He had been a neighbor of the victims for about ten years. He classified them as "close friends".
He further testified:
"MR. MERCER: Is there any reason, Mr. Martin, why because of that friendship that you would feel you could not serve as a fair and impartial juror?
MR. MARTIN: No.
* * * * * *
"THE COURT: But do you feel that your relationship with the Willies would make you in any way partial to them in this matter?
MR. MARTIN: No.
THE COURT: Do you feel that you could be impartial to this Defendant throughout this trial regardless of what evidence comes before you?
MR. MARTIN: Yes, sir."
The finding of the trial judge as to bias is entitled to great weight. The record, in our opinion, is inadequate to show an abuse of discretion. See State v. Brazile, 229 La. 600, 86 So.2d 208 (1956).
Bill of Exceptions No. 9 was reserved when the trial judge refused to allow the introduction in globo of the certified records of the New Orleans Charity Hospital and the East Louisiana State Hospital on the issue of the defendant's sanity.
An examination of the record shows that the trial judge was concerned about the size of the files offered and qualified his ruling so as to allow defense counsel to use them in the examination of physicians who testified.
Certified copies of hospital records are admissible in evidence as prima facie proof of their contents. LSA-R.S. 13:3714; State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970). Hence, the trial judge committed technical error in disallowing the introduction of the records.
Physicians from both hospitals testified. Under the trial judge's qualified ruling, defense counsel freely used the records in interrogating the witnesses, bringing to the attention of the jury the pertinent entries. Hence, we conclude no substantial prejudice resulted and that the error is not one that warrants the reversal of the conviction.
Article 921 of the Louisiana Code of Criminal Procedure provides:
"A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial *503 rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."
For the reasons assigned, the original judgment affirming the conviction and sentence is reinstated and made the final judgment of this Court.
BARHAM, J., dissents, adhering to the views expressed in dissent on original hearing.
DIXON, J., dissents.
NOTES
[1] "Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:

"(1) The forcible seizing and carrying of any person from one place to another; or
"(2) The enticing or persuading of any person to go from one place to another; or
"(3) The imprisoning or forcible secreting of any person.
"Whoever commits the crime of aggravated kidnapping shall be punished by death; provided that if the kidnapped person is liberated unharmed before sentence is imposed then the sentence of death shall not be given but the offender shall be sentenced to life imprisonment at hard labor."
LSA-R.S. 14:44.
[2] In brief, counsel for the defendant avers:

"ARGUMENT
"BILL OF EXCEPTION NO. 1
"This bill was reserved to the ruling of the trial judge denying defendant's plea of present incapacity to proceed.
"However, in view of the unanimous opinion of sanity expressed by the members of the sanity commission in their report and under examination and the Supreme Court's great reluctance to disturb such determinations of the trial judge, no useful purpose would be served in presenting argument on this bill."