128 So.2d 651

**STATE of Louisiana**

**v.**

**Lester NEWTON.**

No. 45365.

March 20, 1961.

Rehearing Denied April 24, 1961.

Gravel, Sheffield & Fuhrer, Alexandria, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., F. Jean Pharis, Dist. Atty., A. M. D'Angelo and Jules L. Davidson, Jr., Asst. Dist. Attys., Alexandria, for appellee.

HAMITER, Justice.

A jury tried Lester Newton under an indictment charging that on or about July 4, 1959 he committed aggravated rape in the Parish of Rapides, and it returned a verdict of guilty as charged. Thereupon, the defendant filed a motion for a new trial. However, the district judge overruled it, following a lengthy hearing thereon, and subsequently pronounced a sentence of death.

On this appeal the defendant relies on two bills of exceptions for a reversal of his conviction and sentence, one of which was taken to a ruling made during the hearing on the motion for a new trial and the other to the overruling of such motion.

Near the close of the hearing on the motion for a new trial one of the two defense counsel (they were partners in the practice of law) announced that Mr. David Sheffield (the other attorney for the defendant) desired to take the stand for the purpose of impeaching testimony given at the hearing by a witness for the state; and, in connection with the announcement, he directed attention to Article 19 of the Canons of Professional Ethics of the Alexandria Bar Association (assertedly contained also in the Canons of Professional Ethics of the Louisiana State and Federal Bar Association) which provides that: *"Appearance of Lawyer as Witness for His Client.* When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument ·and the like, he shall leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer shall avoid testifying in court in behalf of his client." 21 LSA–R.S. following 37:218.

Declaring that Mr. Sheffield did not wish to withdraw from the case, and that his client did not favor a withdrawal, counsel

then requested that the court order him to testify so that "we would be protected against any charge that might be brought as a result of our testifying." The court refused the request, and the first bill of exceptions herein relied on was reserved. Mr. Sheffield did not testify.

On this appeal defense counsel argue: "The court should allow a lawyer to testify as a witness for his client where such testimony is material and relevant and is essential to the ends of justice in an aggravated rape case without the necessity of leaving the trial of the case to other counsel as required under the canon of ethics, Art. 19."

The colloquy between the judge and counsel, which led to the reservation of the bill, is contained in the record. And it fully sustains the statement of the judge in his per curiam that " * * * the Court made it clear that it would allow Mr. Sheffield to testify even though he had not been placed under the order of sequestration of witnesses. Furthermore, the Court made it clear that Mr. Sheffield would be allowed to testify if he chose to do so but the Court refused to compel Mr. Sheffield to testify." Incidentally, the state had objected to any testimony from Mr. Sheffield on the ground that, contrary to a previously issued sequestration of witnesses order, he had remained in the court room throughout the hearing on the motion for a new trial; however, the objection was overruled.

In denying the request to compel the attorney to testify the judge stated from the bench: "Well, my inclination as regards the question of ethics is that that is not a question for the Court. The only question for the Court is whether we should allow testimony by a witness who was not under the order of sequestration. Of course, that is a matter which addresses itself to the discretion of the Court, the Court can in its discretion allow witnesses to testify even though they have not been properly placed under the rule. Well, in view of the very serious nature of the case, I don't suppose I have any other alternative, actually. I will allow the testimony of [Mr. Sheffield] —even though Mr. Sheffield was not under the rule. But I can't rule on this other question of ethics now, that's just not within my province." Further, in his per curiam, the judge said: "The canons of ethics of the Alexandria Bar Association are simply rules of ethics adopted by this association. These rules are not part of the criminal laws of the State of Louisiana and do not come within the jurisdiction of the Court. If Mr. Sheffield had chosen to testify, the Court, as it stated, would have allowed him to do so. However, this was a matter for Mr. Sheffield to decide. The Court could not compel him to testify." (Brackets ours.)

In the quoted observations and conclusions of the judge we find no error. We are not aware of any law which provides

for a judge's requiring the commission of conduct that might be violative of canons of professional ethics of bar associations. Besides, defense counsel herein knew the nature and importance of the testimony they proposed to offer; and theirs was the responsibility for determining whether its introduction was ethically proper and should be undertaken.

As aforestated the second bill of exceptions relied on here was reserved to the overruling of the motion for a new trial. And in the motion the defendant made allegations (among others) as follows: "One of the jurors, namely, A. C. Perkins of Alexandria, Louisiana, who served on the panel which returned a verdict of 'guilty as charged' * * * was incompetent to serve on the jury; that said juror had publicly expressed a decided adverse opinion as to the guilt of the accused and answered falsely on his voir dire examination in denying he had such a decided opinion * * *.

" * * * that said juror was questioned as to his competency on his voir dire examination and answered affirmatively, among other statements, that he had not formed an opinion as to the guilt or innocence of the accused, that he could afford the defendant the presumption of innocence that he is to be accorded under the law, and, that he could afford the defendant a fair and impartial hearing * * *.

" * * * that said expressions of opinion on the part of the said A. C. Perkins immediately prior to his acceptance as a juror for the trial of this case evidences that he was not impartial and further that he had a fixed and deliberate opinion as to the guilt of the accused and accordingly would not be a competent juror.

" * * * that said juror was accepted * * * in good faith based upon his voir dire examination; that had he known of such statements made and opinions held by the said A. C. Perkins, he would not have been accepted to serve as a juror in this case.

"Notwithstanding the exercise of reasonable diligence the existence of said statements and opinions of said A. C. Perkins were not known before or during the trial of this case and not until after verdict by neither mover nor his counsel."

In passing upon such second bill of exceptions it is appropriate to consider these legal principles: A special cause for which a juror may be challenged is that "he is not impartial, the cause of his bias being immaterial; but an opinion as to guilt or innocence of the accused, which is not fixed, or has not been deliberately formed, or that would yield to evidence, or that could be changed, does not disqualify the juror; * * *" LSA–R.S. 15:351, paragraph 1. " * * * considerable latitude must of necessity be allowed in the

examination of jurors and the trial judge is without right to unduly curtail that examination." State v. Brazile, 229 La. 600, 86 So.2d 208, 211. "The incompetency of a juror, from whatever cause arising, must be urged before the juror is sworn in, and can not be set up for the first time after verdict *unless the juror should have answered falsely on his examination* as to the special disqualification subsequently set up by the accused." LSA–R.S. 15:355. See also State v. Futch, 216 La. 857, 44 So.2d 892. (Italics ours.)

■ On his voir dire examination Mr. Perkins testified, in response to specific questions propounded to him, that he had not formed any conclusion as to the guilt or innocence of the accused; that he could be a fair and impartial juror as to both the defendant and the state; that he could take the evidence as adduced in the court room, as well as the law as pronounced by the court, and therefrom arrive at a fair and just conclusion; and that he "could give this defendant the cloak of innocence that he is afforded under the law throughout the trial of this case until such time as he's proven guilty beyond a reasonable doubt."

At the hearing of the motion for a new trial, and obviously realizing that its success depended upon a proving that the mentioned testimony of Perkins (given on the voir dire examination) was false, defense counsel called as witnesses Neil Dore and Joseph P. Longo, Jr. who worked as barbers at Dore's Barber Shop in Alexandria which Perkins frequently patronized. Both testified that during the morning of, and shortly before, the commencement of this defendant's trial Perkins (along with other persons) was in the barber shop; that there was conversation relative to the trial to be held that day at which Perkins had been summoned for jury duty; and that during the conversation he stated in effect that " * * * they wouldn't take him because he was not only for frying the nigger but if needed he'd help pull the switch." However, it is to be noticed that Dore and Longo also said that such statement by Perkins was merely "barber shop conversation"; that they could not remember any other remarks made by him or whether he had obtained barber service that morning, notwithstanding that he was in the shop some thirty or forty minutes; that they were not listening attentively to the conversation; and that they failed to hear everything that was said. With respect to his inattentiveness Dore was quite frank in testifying that the conversation "just wasn't that important" and that Perkins could have said "if he was guilty" in qualification of his above mentioned statement.

Perkins, on the other hand, categorically and emphatically denied having made the statement attributed to him by Dore and

Longo, although he readily conceded that there had been conversation in the shop relative to the instant prosecution, to the Caryl Chessman case that had occurred in California, and generally to capital punishment in rape cases. Also, he admitted that he stated during the conversation that " * * * no defense attorney would want me on an aggravated rape case because *if his client were proven guilty* I would not only convict him, if they needed me to they would not have to do a Caryl Chessman, I would go pull the switch for them." (Italics ours.)

Furthermore, the version of the conversation as given by Perkins was generally corroborated by J. Moody Ellington (a patron in the shop at the time), and he specifically testified that the statement in question of the former was to the effect that " * * * *if he was on the jury and the evidence presented was that the man, or person was guilty,* that if necessary he'd be the first one to vote him guilty and if necessary if they needed somebody he'd pull the switch." (Italics ours.)

Considering the indefinite and generally unsatisfactory testimony of Dore and Longo, the categorical and emphatic denial by Perkins that he made the statement which those witnesses attributed to him, and Ellington's corroboration of Perkins' version of the conversation that took place in the barber shop, we are unable to disagree with the trial judge's conclusion that

the defendant failed to prove the falsity of the sworn answers given by Perkins on his voir dire examination.

Our decision in State v. Giron, 52 La. Ann. 491, 26 So. 985, on which defense counsel place much reliance, is not controlling here because it is distinguishable on the facts. Therein, a prospective juror denied on his voir dire examination that he had previously formed or expressed an opinion as to the guilt or innocence of the accused; whereas, on a hearing of a motion for a new trial the evidence adduced overwhelmingly showed (unlike the instant factual situation) that he had done so.

Alternatively, defense counsel argue that Perkins was incompetent to serve as a juror because even his admitted statement (above quoted) evidences that he could not bring in a qualified verdict. Considered alone such statement does not justify that conclusion. Moreover, it is to be noticed that Perkins was never asked on his voir dire examination whether he had scruples against such a verdict. The examination was very cursory, and no phase of it discloses an attempt to elicit this information from him.

On numerous occasions we have pointed out that defense counsel have the right to question a prospective juror on his voir dire examination relative to the returning of a qualified verdict, just as the state may find out whether he has scruples

against capital punishment. State v. Henry, 196 La. 217, 198 So. 910; State v. Johnson, 226 La. 30, 74 So.2d 402; State v. Jackson, 227 La. 642, 80 So.2d 105 and State v. Weston, Jr., 232 La. 766, 95 So.2d 305. And since in the instant cause counsel failed to exercise this prerogative they, under the express provisions of LSA–R.S. 15:355, are now without right to complain.

During the course of the trial numerous other bills of exceptions were reserved on behalf of the defendant, and later they were duly perfected. However, in this court they were not argued either orally or in brief, as a consequence of which we might justifiably treat them as having been abandoned. State v. Nix, 211 La. 865, 31 So.2d 1; State v. Simpson, 216 La. 212, 43 So.2d 585; State v. Dowdy et al., 217 La. 773, 47 So.2d 496; State v. Jourdain, 225 La. 1030, 74 So.2d 203; State v. Dabbs, 228 La. 960, 84 So.2d 601; State v. Mills, 229 La. 758, 86 So.2d 895; State v. Williams, Jr., 230 La. 1059, 89 So.2d 898. In the cited Mills case we particularly observed: "Mills Bills Nos. 2, 3, 5, 8, and 12 were submitted to this court without oral argument or discussion in brief, and without citation of authorities. Under this state

of facts we would be justified in considering these bills abandoned, and probably will do so under similar circumstances in the future. * * *" [229 La. 758, 86 So.2d 899]. Nevertheless, and primarily because this is a capital case, we have carefully examined each of such bills; and our examination convinces us that none is meritorious.

Twenty-one days after the instant cause was argued and submitted here, and subsequent to the preparation of the foregoing opinion, defense counsel filed a typewritten supplemental brief in which they further argue the two bills of exceptions above passed upon and they cursorily discuss some of the remaining perfected bills (not heretofore discussed by them). In the light of that supplemental brief we have re-examined all of the bills of exceptions contained in the record; and we are still convinced that they, considered both individually and collectively, fail to disclose any error committed in the trial court which prejudiced the substantial rights of the accused for a fair and impartial hearing.

For the reasons assigned the conviction and sentence appealed from are affirmed.