268 So.2d 590 (1972)
263 La. 379
STATE of Louisiana
v.
Earnest SHEPPARD.
No. 51815.
Supreme Court of Louisiana.
May 1, 1972.
On Rehearing November 6, 1972.
*591 Kramer & Kennedy, Ralph W. Kennedy, Jr., Alexandria, for defendant-appellant.
Jack P. F. Gremillion, William J. Guste, Jr., Attys. Gen., Harry H. Howard, Asst. Atty. Gen., Edwin O. Ware, III, Dist. Atty., Martin L. Laird, III, Robert P. Jackson, Asst. Dist. Attys., for plaintiff-appellee.
HAMLIN, Justice.
The defendant appeals from his conviction of Armed Robbery, LSA-R.S. 14:64, and his sentence to serve thirty years at hard labor in the Louisiana State Penitentiary. Five bills of exceptions reserved *592 during the course of the proceedings are presented for our determination.

BILL OF EXCEPTIONS NO. 1
Bill of Exceptions No. 1 was reserved when the trial court denied defendant's motion to suppress the confession he had given police officers on March 14, 1971.
The motion to suppress averred that the "confession was obtained under the influence of inducement and promises calculated, under the circumstances, to induce a confession, irrespective of its truth or falsity and under treatment designed by effect on body or mind to compel a confession of crime as contemplated by LSA-R.S. 15:451 and LSA-R.S. 15:452."
Herein, defense counsel argues that the burden of proving the voluntary nature of a confession rests upon the State, and that reasonable doubt exists as to the voluntary nature of the instant confession.[1] He submits that the trial court committed manifest error in denying the motion to suppress.
A reading of the evidence given at the hearing of the motion to suppress discloses that Lt. Charles David Ezernack, Lt. Thomas L. Lejeune, and Captain Jim F. *593 Daniels all testified that the confession supra was given willingly; there was no fear, coercion, intimidation, menace, threats, promises, or inducements. Defendant was given the Miranda warnings, Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and signed a waiver of rights.[2] Defendant testified in his own behalf; his testimony is to the effect that he did sign the waiver of rights and gave the confession supra because of promises and inducements of leniency.
The trial judge's finding that a confession was given voluntarily is accorded great weight. State v. LaCoste, 256 La. 697, 237 So.2d 871. Cf. State v. Thompson, 256 La. 1019, 240 So.2d 899. We conclude that the following per curiam of the trial judge is supported by the evidence adduced at the hearing of the motion to suppress:
"The defendant moved to suppress the confession that he had given to the police officers. The Court held a hearing on the motion to suppress and denied the motion.
"The evidence on the motion to suppress clearly indicated the confession was given freely and voluntarily by the accused and that there were no promises, inducements, threats or physical abuse used by the police officers to obtain the confession. Prior to the taking of the confession the police officers fully advised the accused, on more than one occasion, of his constitutional rights, including his right to remain silent, of his right to counsel and that any statement he made could be used in a court against him.
"The accused stated that he gave the confession because the police officer told him that he wanted to get Leonard Bell and if he did he could get a promotion because of it. This is rather ridiculous on its face. Nevertheless I carefully weighed all of the testimony and am convinced that the true facts of the case are as given by the police officers. The Court is well acquainted with all of the police officers who testified and has no hesitancy in stating that it has the utmost confidence in the integrity of these police officers.
"There was no doubt in the Court's mind that the State fully sustained their burden in regard to the confession."
Bill of Exceptions No. 1 is without merit.

BILL OF EXCEPTIONS NO. 2 (PRESENTED WITHOUT ARGUMENT)
Bill of Exceptions No. 2 was reserved when the trial judge denied defendant's motion for a continuance.
The granting or refusing of a motion for continuance is within the sound discretion of the trial judge. Art. 712, LSA-C.Cr.P.; State v. Polk, 258 La. 738, 247 So.2d 853. Cf. State v. Shilow, 260 La. 23, 255 So.2d 60. We find no abuse of discretion by the trial judge; the following per curiam explains his reasons for denial of the instant motion:
"The defendant moved for a continuance on the ground that one of the witnesses of the defendant was out of the state. This witness supposedly was a cell-mate of this defendant at the time that the police officer asked the defendant if he wished to make a statement regarding his participation in the crime. The defendant contends that it was at this time that the police officer stated that he wanted the defendant to implicate Leonard Bell as Leonard Bell was the only one they were after and were not after the defendant and also this would bring about a promotion for the police officer. The motion to suppress was scheduled *594 for hearing on May 14th. The request for the subpoena to be issued for this witness was on May the 13th at 3:00 P.M. In other words at 3:00 P.M. the defendant requested a subpoena for a witness to appear in court at 10:00 the next morning. This certainly is not due diligence.
"At the time that the deputy sheriff served the subpoena it was discovered that this witness was not present. Someone in the home where the witness had previously lived stated that he had gone to California about a month ago.
"There was no showing as to when this witness would return to Louisiana, if ever. The witness may remain in California for the rest of his life. It was not known whether he intended to remain in California or to return to Louisiana. It wasn't even known where in California the witness was residing.
"The defendant did not fulfill any of the requirements of the Code of Criminal Procedure for a continuance."
Bill of Exceptions No. 2 is without merit.

BILL OF EXCEPTIONS NO. 3
Bill of Exceptions No. 3 was reserved when the trial judge restricted defense counsel's questioning of prospective juror Joseph Silas Johnson, Jr. and applied his ruling to the questioning of other prospective jurors.
The pertinent questioning of the juror, the ruling of the trial judge, and the colloquy between the trial judge and defense counsel are as follows:
"Q. Mr. Johnson, will you follow the Court's instructions that were given to you a little earlier?
"A. Yes sir.
"Q. In particular, will you follow the instructions of the Court that the defendant is presumed to be innocent until he is proven guilty?
"A. Yes sir.
"Q. Do you have any opposition to the Court's comment that the indictment is proof of absolutely nothing?
"BY THE COURT: Mr. Kennedy, in reference to that, I have instructed the jurors on preliminary on the law. At the conclusion of the evidence, I will instruct them fully and completely on the law applicable to the case and to instruct them to accept the law as I give it to them and whatever their personal feelings about the law is [is] of no importance because they have got to follow the law that I give and we are not going to go into whether they are going to accept each phase of the law that I give them. He has told you that he would follow the law that was given to him by the court and I know Mr. Johnson and I know that he will do that. We are not going to just break it all down and ask him each phase of the law because really criminal procedure takes one semester of law school and we don't have that long to try this case.
"BY MR. KENNEDY: Your Honor, I understand what you mean but I feel like we are entitled to examine the prospective jurors on the specific charges of law, to determine if they will follow your instructions. I am afraid of one particular juror not necessarily one but some of them may have particular opposition to one particular charge and I think we should find it out now so that they can be excused from service.
"BY THE COURT: Well, if we did that I would have to give my full charge to the juror and just go through that thing and all we would do would be to have a nice little course in criminal procedure, which we are not going to permit at this time. I have made my ruling and you can reserve your bill and I expect no more questions regarding the law except the blanket questions of whether or not the jurors will follow the law given to them by the Court.
"BY MR. KENNEDY: Is, Your Honor, instructing me then, no more questions along this line? *595 "BY THE COURT: I certainly am.
"BY MR. KENNEDY: All right, Your Honor, at this time, I will respectfully reserve a bill of exception."
Herein, defense counsel submits that the trial court committed manifest error in restricting his voir dire. He argues: "The question at issue asked of the juror was `Do you have any opposition to the court's comment that the indictment is proof of absolutely nothing'. (Tr. 124) This question presumed the juror's understanding of the law and directs itself to the determination or discovery of any prejudice or bias in the mind of the juror. It was not an inquiry into the juror's knowledge or understanding of the law. The trial court then instructed counsel to ask no further questions along this line (Tr. 126). If one assumes the juror understood the trial court's instruction of the law the defendant was still entitled to know if there existed any bias or prejudice concerning that legal principle in the juror so that he could decide to exercise a peremptory challenge. Additionally, counsel was unable to ask this of any subsequent juror. This juror, Joseph Silas Johnson, Jr., was among the first to be examined."
The per curiam of the trial judge to the instant bill recites:
"The defendant reserved a bill of exception when the Court on its own motion prevented counsel from asking questions pertaining to the criminal law on voir dire examination of prospective jurors.
"This is the same legal issue that was presented to the Louisiana Supreme Court in State v. Richey, 258 La. 1094, 249 So.2d 143 (1971).
"There has been a slight change of procedure by this writer in the handling of juries and voir dire examination subsequent to the Richey case in this court, but before the decision in the Louisiana Supreme Court. On a Monday morning the writer asks for and acts upon all disqualifications and exemptions from every juror on the venire. After the jury has thus been screened the remainder are the ones from which the petit jury to try the case is to be picked. Prior to any questioning by any of the attorneys, either for the State or for the defense, the Court instructs all of the jurors as to the law applicable to the trial of any criminal case. These instructions cover reasonable doubt, burden of proof, presumption of innocence, the fact that the bill of information is not evidence of guilt, and the filing or finding of such bill of information or bill of indictment creates no presumption whatever and is proof of nothing, etc. These instructions were given to the jurors in this case. After I instructed the jurors on these phases of law I asked if there were any on the venire list that could not fully accept the law and apply it as given by the Court. None of the jurors responded in the negative. On voir dire examination I permit counsel to ask the prospective juror if he will apply all of the law and follow all of the law that is given by the Court. He understands what the law is as it has been explained to him. I permit counsel to do this even though this is actually repetitious of what the Court has done prior to examination by counsel. I do not permit counsel to ask specific questions into every particular phase of the law which I have covered in the preliminary instructions or which I will cover in the final instructions. As to this particular juror counsel asked the question as follows:
"Mr. Johnson, will you follow the Court's instructions that were given to you a little earlier?
"Yes sir.'
"It would have served no purpose to permit counsel to break down this one question if the jurors would follow the law as given by the Court into many questions and get the same response. In the first place counsel is not permitted to ask the jurors of their understanding of the law. In this case this question was actually asked of this juror but it was a blanket question. No prejudice whatever has been shown by this defendant."
*596 In this matter, the motion to suppress and the motion for a continuance were heard on Friday, May 14, 1971; trial began on Monday, May 17, 1971. We must presume that the petit jury which tried this case received the trial judge's instructions on the day trial began, and that defense counsel was present when such instructions were given. Counsel was apprised of the thorough instructions; he was not in the position of an attorney who was not present in court on Monday morning and commenced the trial of his case during mid-week.
Article 786 of the Code of Criminal Procedure provides that the scope of the voir dire examination of prospective jurors shall be within the discretion of the court. In State v. Richey, 258 La. 1094, 249 So.2d 143, 151 (1971), we said: "Our holdings, supra, with respect to voir dire, some before the enactment of our new Code of Criminal Procedure, have all been based on the predicate that the rulings of the trial judge on voir dire will not be disturbed unless he has committed an abuse of his discretion. Art. 786, LSA-C.Cr.P., supra, prescribes that the scope of the examination shall be within the discretion of the court; therefore, the voir dire examination in each criminal case is within the discretion of the judge trying the case. The following pertinent statement was made in State v. Schoonover, 252 La. 311, 211 So.2d 273, 275 (1968): "The extent to which counsel may examine jurors on their voir dire rests largely within the discretion of the trial judge. State v. Green, 244 La. 80, 150 So.2d 571 (1963). A wide latitude in the exercise of the judge's discretion is allowed by a liberal attitude of the appellate courts. See State v. Hills, 241 La. 345, 129 So.2d 12 (1961). In general, however, we have not approved of lengthy statements of particular phases of law being expounded to jurors on their voir dire examination as a preface to interrogation, for this practice tends to facilitate attempts to commit the juror's vote in advance of deliberation. Care should be exercised by the trial court to prevent this result. La.Code of Crim.P. art. 357 (1928). State v. Bickham, 236 La. 244, 107 So.2d 458 (1958).' See, State v. Newton, 241 La. 261, 128 So.2d 651; State v. Rogers, 241 La. 841, 132 So.2d 819. Cf. State v. Brazile, 229 La. 600, 86 So.2d 208."
We have previously stated that what might be an improper question on voir dire in one case might not be an improper question in another case; the discretion exercised by the trial judge in one case might not be the discretion exercised in another. Our duty is to decide whether the trial judge abused his discretion in restricting voir dire in the particular case we are reviewing. The discretion of the trial judge is not unlimited; it is always subject to our determination as to whether reversible error was committed in the rulings on voir dire.
Under the instant facts and circumstances, as stated and quoted supra, we do not find that the trial judge abused his discretion in disallowing the question, supra, propounded by defense counsel. "Do you have any opposition to the Court's comment that the indictment is proof of absolutely nothing?" was a question which asked for a mental feeling of the prospective juror. Had the prospective juror answered, "yes," the answer would not necessarily have meant that he would not have rendered a verdict in accordance with law and the instructions given by the trial judge. We conclude that the trial judge's ruling eliminated unnecessary, redundant and prolonged voir dire questioning; it did not prejudice the defendant who has neither shown that he had to accept an obnoxious juror nor suffered any violation of his constitutional rights.
Bill of Exceptions No. 3 is without merit.

BILL OF EXCEPTIONS NO. 4 (PRESENTED WITHOUT ARGUMENT)
Bill of Exceptions No. 4 was reserved when the trial judge denied defense counsel's motion for a directed verdict.
*597 The trial judge properly denied the motion; the following per curiam explains his reasons for the ruling:
"At the conclusion of the case the defendant moved for a directed verdict of acquittal, orally, upon the reason that the State had not proved that the defendant was culpable, in that the State had failed to prove that he was over 17 years of age. This was a trial by jury. The Supreme Court has held many times that the District Judge has no constitutional authority to grant a directed verdict of aquittal. I would not in this case, had I the authority to do so, because this would not go to the guilt or innocence of the accused as to permit the granting of a directed verdict of acquittal. The objection raised by the defendant here was as to the jurisdiction of the Court. If the accused was under 17 years of age the defendant should have filed a motion objecting to the jurisdiction of the District Court as such could lie only in Juvenile Court.
"The record clearly shows however that this accused is over 17 years of age. After announcement of sentence he gave his age as 19." See, State v. Dimopoullas, 260 La. 874, 257 So.2d 644.
Bill of Exceptions No. 4 is without merit.

BILL OF EXCEPTIONS NO. 5 (PRESENTED WITHOUT ARGUMENT)
Bill of Exceptions No. 5 was reserved when the trial judge denied defense counsel's motion for mistrial based on the ground that a question propounded by the State to a witness on cross-examination was prejudicial.
The testimony connected with the reservation of the instant bill is as follows:
"Q. You say that you are Phillip Johnson?
"A. Yes sir.
"Q. What school do you go to, Phillip?
"A. I don't go to school.
"Q. You don't go to school, why not?
"A. I came back too late, I came from out of town and then it was too late for me to go to school here.
"Q. Where had you been out of town?
"A. Monroe.
"Q. What were you doing in Monroe?
"A. I was in the Louisiana Training School.
"Q. I didn't hear you.
"A. Louisiana Training Institution.
"BY MR. KENNEDY: Your Honor, I am going to object to that question as being improper. This is a clear attemptprejudicial question designed to influence the jury. Sir, I am going to make a motion for a mistrial on the grounds of that question."
Defendant has not shown that he suffered any prejudice by the above question. The trial court admonished the State not to pursue the questioning; see, LSA-C.Cr.P. art. 771; no reversible error was committed. The following per curiam of the trial judge explains the reasons for his ruling:
"When the State took over this witness for cross-examination the District Attorney sought some background information. It is always permissible and proper cross-examination to go into some background of the witness. Background of the witness is necessary in order to permit the jury to better evaluate the testimony that that witness gave. This witness was a young man and the District Attorney merely asked him what school he went to. He replied that he didn't go to school and the District Attorney asked him why not, and he stated that he came back too late from being out of town, the District Attorney then asked him where he had been out of town and he said Monroe, then the District Attorney asked him what he had been doing in Monroe and he stated that he was in *598 the Louisiana Training Institute. At this point the defense counsel objected and argued that it was prejudicial and designed to influence the jury and moved for a mistrial. The Court denied the motion for a mistrial. The District Attorney stated that he had no idea where the witness was or what school he was going to. At this point I directed both parties to not pursue the matter any further. At this point the defendant reserved this bill of exception. I can not possibly see how there was any prejudice to this accused by this unknown response to a question by the District Attorney. This was not the accused stating that he had been to LTI but a witness stating that he had been to LTI."
Bill of Exceptions No. 5 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
McCALEB, C. J., concurs in the results as to Bill No. 3 and otherwise subscribes to the opinion.
BARHAM, J., dissents with written reasons.
TATE, J., dissents and concurs in opinions of BARHAM and DIXON, JJ., as to Bill No. 3 (voir dire examination).
DIXON, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
The reasons given in my dissent in State of Louisiana v. Bell, 263 La. 434, 268 So.2d 610, decided this day, are also applicable to this case.
The defense lawyer here was interrupted by the trial judge when the lawyer inquired, "Do you have any opposition to the Court's comment that the indictment is proof of absolutely nothing?"
Contrary to the inference contained in the majority opinion, if the juror had answered affirmatively, without further explanation, he could have been challenged for cause under the provisions of article 797(4) of the Code of Criminal Procedure: "The juror will not accept the law as given to him by the court . . ."
BARHAM, Justice (dissenting).
Pretermitting any inquiry into the other bills of exceptions, I find reversible error under Bill of Exceptions No. 3, and will address my remarks to that bill.
The same question of law is presented here as is presented in State v. Crittle, 263 La. 418, 268 So.2d 604 on our docket, and State v. Bell, 263 La. 434, 268 So.2d 610, both decided today. In Crittle the majority ordered a reversal, in Bell it did not, and here it does not. The majority of this court, without comparing these cases or cross-citing them, has simply found in one case that the limitation of voir dire examination was reversible error and in two cases that it was not. Here, as in the other cases cited, counsel for the accused was trying to determine whether jurors would accept certain principles of law, such as the presumption of innocence and that an indictment is not indicative of guilt and is proof of nothing. In this case defense counsel explained that he was greatly concerned that some of the jurors might have particular opposition to a special rule of law applicable to the case.
In the per curiam as quoted by the majority, the trial judge explains his new procedure for selecting petit jurors. On the first day of the trial week, before any case is called for trial or any accused brought to the bar, the court instructs all the prospective jurors on the law. The same general legal principles are not applicable to all cases, and some particular principles apply only to the exceptional case. The judge cannot know the applicable law in all of the cases of varying criminal charges pending for that week *599 when he cannot know at that moment the posture of the cases as they will be presented for jury determination. After the judge has instructed the jurors on what he believes to be the pertinent law in all the cases for the week, in every particular case which comes on for trial he permits counsel only "to ask the prospective juror if he will apply all of the law and follow all of the law that is given by the Court". He says further: "I do not permit counsel to ask specific questions into every particular phase of the law which I have covered in the preliminary instructions or which I will cover in the final instructions." (Emphasis supplied.)
Criminal trials in jury cases begin in Louisiana with the selection and swearing of the jury. C.Cr.P. Art. 765(1). Under Code of Criminal Procedure Article 786 all prospective jurors must be sworn before being examined as to their qualifications to serve, and "the court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. * * *" Article 1, Section 10, of the Louisiana Constitution gives every accused the right to challenge jurors peremptorily that is, without need to show any reason or cause. Article 1, Section 9, says the accused shall have the right to an impartial jury. Code of Criminal Procedure Articles 797 and 798 set forth the grounds for challenge for cause. Under these laws I cannot believe that the majority means to say, or in any way indicate, that the trial court has discretion to entirely eliminate questioning which could establish one ground for challenge for cause, that "The juror will not accept the law as given to him by the court". C.Cr.P. Art. 797(4). Moreover, these laws recognize the latitude given defense counsel to manage voir dire examination so that the right to peremptory challenges can be effectively exercised.
In this particular case there is no indication that the prospective jurors were sworn before the court instructed them and inquired of them whether they would accept the law. Moreover, it is admitted by the trial judge that this procedure was followed only on the first day of a jury week preceding any trials and not immediately before each case. The majority of this court has somehow found that: "We must presume that the petit jury which tried this case received the trial judge's instructions on the day trial began, and that defense counsel was present when such instructions were given." I am unable to determine what law requires it to make such presumption, or what facts can lead to that conclusion. In addition, this conclusion has no function in considering the legal question with which we are faced, especially under the law cited above.
Under the voir dire procedure adopted by this district court there exists the probability, supported by this case, that another mandatory right of the accused will not be observed. The defendant is entitled to be present at every important stage of the proceedings, and the selection of the jury is one of the stages that requires the presence of the accused, Art. 831(3), C.Cr.P., as well as the charging of the jury, Art. 831(5) and Comment (d). In this case there is no showing that the defendant was present while the judge "instructed" the prospective jurors. The majority errs in trying to distinguish this case on the basis that counsel was in the courtroom at some pre-trial proceeding conducted by the judge. This could hardly be considered waiver by temporary voluntary absence of defendant under Article 832 of the Code of Criminal Procedure.
In find that the procedure here was an abuse of the discretion granted to the court under Article 786, C.Cr.P., and further was a violation of expressed law, constitutional and statutory. For the reasons here stated, and those stated in may dissents in State v. Crittle, supra; State v. Bell, supra; and State v. Richey, 258 La., 1094, 249 So.2d 143 (1971). I respectfully dissent.

*600 ON REHEARING
SANDERS, Justice.
We granted a rehearing in this case as to Bill of Exceptions No. 3, because of defense counsel's forceful allegations that the defendant was prejudiced by the trial judge's arbitrary restriction upon voir dire examination of jurors.
The defense examination of the prospective juror, Joseph Silas Johnson, Jr., immediately preceding the contested ruling, was as follows:
"Mr. Johnson, will you follow the Court's instructions that were given to you a little earlier?
"Yes sir.
"In particular, will you follow the instructions of the Court that the defendant is presumed to be innocent until he is proven guilty?
"Yes sir.
"Do you have any opposition to the Courts comment that the indictment is proof of absolutely nothing?
"BY THE COURT: Mr. Kennedy, in reference to that, I have instructed the jurors on preliminary on the law. At the conclusion of the evidence, I will instruct them fully and completely on the law applicable to the case and to instruct them to accept the law as I give it to them and whatever their personal feelings about the law is of no importance because they have got to follow the law that I give and we are not going to go into whether they are going to accept each phase of the law that I give them. He has told you that he would follow the law that was given to him by the court and I know Mr. Johnson and I know that he will do that. We are not going to just break it all down and ask him each phase of the law because really criminal procedure takes one semester of law school and we don't have that long to try this case.
"BY MR. KENNEDY: Your Honor, I understand what you mean but I feel like we are entitled to examine the prospective jurors on the specific charges of law, to determine if they will follow your instructions. I am afraid of one particular jurornot necessarily one but some of them may have particular opposition to one particular charge and I think we should find it out now so that they can be excused from service.
"BY THE COURT: Well, if we did that I would have to give my full charge to the juror and just go through that thing and all we would do would be to have a nice little course in criminal procedure, which we are not going to permit at this time. I have made my ruling and you can reserve your bill and I expect no more questions regarding the law except the blanket questions of whether or not the jurors will follow the law given to them by the Court."
The question raised is whether, after the juror had testified that he would follow the judge's instructions on the law including the presumption of innocence, the trial judge abused his discretion in disallowing further examination as to his understanding of and reaction to the various rules of law deemed applicable to the case.
Article 786 of the Louisiana Code of Criminal Procedure provides:
"The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. A prospective juror, before being examined, shall be sworn to answer truthfully questions asked him relative to his qualifications to serve as a juror in the case."
Under the above article, the voir dire examination is a joint undertaking of the court, the district attorney, and the defense counsel. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of *601 peremptory challenges. See State v. Harper, 260 La. 715, 257 So.2d 381 (1972); State v. Hills, 241 La. 345, 129 So.2d 12 (1961); State v. Brazile, 229 La. 600, 86 So.2d 208 (1956).
One of the grounds on which the state of defendant may challenge a juror for cause is his unwillingness to accept the law as given to him by the court. LSA-C.Cr.P. Art. 797. Hence, the trial judge properly allowed defense cousel to ask the juror whether he would follow the court's instructions as to the law. Quite clearly, the additional questions were designed to probe in detail his knowledge of the legal rules and his reaction to them.
Article 786 provides that the scope of examination shall be in the discretion of the court. In the absence of a clear abuse of that discretion, this Court will not disturb the ruling. State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); State v. Schoonover, 252 La. 311, 211 So.2d 273, cert. den. 394 U.S. 931, 89 S.Ct. 1199, 22 L.Ed.2d 460 (1969); State v. Williams, 230 La. 1059, 89 So.2d 898 (1956).
In the present case, the trial judge allowed defense counsel to conduct a lengthy examination of the juror, relating to his impartiality, prior knowledge of the crime, acquaintanceship with the district attorney, law enforcement officers, and witnesses. Following this, defense counsel received from the juror the affirmative response that he would follow the judge's instructions as to the law.
In his Per Curiam, the trial judge states:
"Prior to any questioning by any of the attorney's, either for the State or for the defense, the Court instructs all of the jurors as to the law applicable to the trial of any criminal case. These instructions cover reasonable doubt, burden of proof, presumption of innocence, the fact that the bill of information is not evidence of guilt, and the filing or finding of such bill of information or bill of indictment creates no presumption whatever and is proof of nothing, etc. These instructions were given to the jurors in this case. After I instructed the jurors on these phases of law I asked if there were any on the venire list that could not fully accept the law and apply it as given by the Court. None of the jurors responded in the negative. On voir dire examination I permit counsel to ask the prospective juror if he will apply all of the law and follow all of the law that is given by the Court. He understands what the law is as it has been explained to him. I permit counsel to do this even though this is actually repetitious of what the Court has done prior to examination by counsel. I do not permit counsel to ask specific questions into every particular phase of the law which I have covered in the preliminary instructions or which I will cover in the final instructions. As to this particular juror, counsel asked the question as follows:
"`Q Mr. Johnson, will you follow the Court's instructions that were given to you a little earlier?
"A Yes sir."
"It would have served no purpose to permit counsel to break down this one question if the jurors would following the law as given by the Court into many questions and get the same response. In the first place counsel is not permitted to ask the jurors of their understanding of the law."
This Court has long viewed with disfavor the extended interrogation of a juror as to his understanding of or reaction to the particular phases of law on which the trial judge has a duty to instruct him. See State v. Richey, 258 La. 1094, 249 So.2d 143 (1971): detailed inquiry about presumption of innocence and reasonable doubt; State v. Schoonover, 252 La. 311, 211 So.2d 273 (1968): lengthy statements of particular phases of law; State v. Oliver, 247 La. 729, 174 So.2d 509 (1965): inquiry as to whether juror would feel the defendant guilty because he was charged or because *602 he might not testify; State v. Bickham, 236 La. 244, 107 So.2d 458 (1958): lengthy statements of particular phases of law; State v. Dabbs, 228 La. 960, 84 So.2d 601 (1955): defense counsel reading law to jurors on voir dire; State v. Brown, 172 La. 121, 133 So. 383 (1931): trial judge stating the law of self-defense during voir dire to enable defense counsel to question the juror concerning it; State v. Dreher, 166 La. 924, 118 So. 85 (1928): questions as to the juror's understanding of the law relating to burden of proof, reasonable doubt, and elements of the crime; State v. Webb, 156 La. 952, 101 So. 338 (1924): question as"to whether juror believed in the right of self-defense; State v. Sinigal, 138 La. 469, 70 So. 478 (1916): trial judge stating the law of self-defense for voir dire examination; State v. Willie, 130 La. 454, 58 So. 147 (1912): questions as to burden of proof and reasonable doubt. See also Marr's Criminal Jurisprudence of Louisiana § 453, p. 691 (1923).[1]
In State v. Oliver, supra, the defense sought to ask the jurors whether the defendant's failure to take the stand would cause them to draw an adverse conclusion as to his innocence and whether the circumstance that defendant was charged and brought to trial would cause them to feel that he was guilty. This Court affirmed the trial judge's exclusion of these questions, holding:
"While the jurors are the judges of the law and the facts of a criminal case in Louisiana, they are duty bound to accept the law as instructed by the court and it is always to be presumed the jurors will comply with this duty. Indeed, they take an oath so to do. And, albeit it is proper on the voir dire examination of a juror for counsel to inquire whether he is willing to accept the law as instructed by the court (see State v. Green, 244 La. 80, 150 So.2d 571), the judge exercises a sound discretion in restricting the breadth of the examination to this inquiry, so that counsel may not unduly explore every detail of the mental attitude of the juror in order to commit him in advance as to his reactions to evidence of the lack of it or as to his application of the law to the facts under the instructions given by the judge. See Marr's Criminal Jurisprudence, 2nd Ed., Vol. 1, Sees. 456, 457 and cases cited in support of the text."
In State v. Brown, supra, the trial court refused to allow defense counsel to ask the juror whether he had any prejudice against the law of self-defense. Defense counsel conceded that the ruling was correct. The Court then sustained an objection to the following question:
"Have you any prejudice against the law of self-defense, and I couple with the question a request that the court explain the law of self-defense to the juror."
This Court affirmed, holding:
"The ruling of the court is correct. The answer of the juror to the questions propounded to him shows that he understood that it was his duty to take the law as expounded by the judge. He said he would do that. That was all defendant had a right to expect and demand. It is not the duty of the trial judge to go into detail and explain to a prospective juror who is being examined on his voir dire all of the different phases of the law which may be applicable to the case on trial. The time for him to do that is after the testimony is closed, and the case is argued and submitted by the state and the accused."
In State v. Webb, supra, the trial judge excluded the following question addressed to the juror: ". . . [D]o you believe that a man has the right to defend himself when he is or may be suddenly or violently attacked?"
*603 In affirming the conviction, this Court stated:
"It is not permissible for counsel to question jurors as to their individual opinion or belief as to what the law is or ought to be in a given case or under certain circumstances. It is true that the Constitution declares that jurors are the judges of both the law and the facts in a criminal case on the question of the guilt or innocence of the accused party, but this is true with respect to the law only in the sense that they are to accept the law as given to them in the charge by the court and apply it to the facts of the particular case."
Although the authorities are divided, the prevailing view in this country is that examination of jurors as to their knowledge of or reaction to particular phases of the law to be given by the court is impermissible. People v. Modell, 143 Cal.App.2d 724, 300 P.2d 204 (1956); State v. Bolle, Mo., 201 S.W.2d 158 (1947); State v. Mosier, Mo., 102 S.W.2d 620 (1937); Commonwealth v. Calhoun, 238 Pa. 474, 86 A. 472 (1913); Fugitt v. State, 85 Miss. 86, 37 So. 557 (1904); Duffy v. Carroll, 137 Conn. 51, 75 A.2d 33 (1950); Harrell v. Commonwealth, Ky., 328 S.W.2d 531 (1959); 50 C.J.S. Juries § 275, p. 1043; Annot., 99 A.L.R.2d 7, 20-23; The State Trial Judge's Book (National Conference of State Trial Judges and the Joint Committee for the Effective Administration of Justice ed. 1965) p. 93; Kennelly and Chapman, The Lawyer's Guide p. 168 (1970).[2]
The prevailing rule is correctly summarized in Trial Lawyer's Guide, supra, as follows:
"In most jurisdictions today, court rules and statutes prohibit the discussion of law during the selection of the jury. This is considered the exclusive province of the trial judge. The extent to which the trial lawyer may now go in the selection of the jury concerning the law is to ask if the jurors will follow the law as given by the court, even though they may disagree with the law, or may feel that the law should be other than as given by the court."
The State Trial Judge's Book, prepared by the National Conference of State Trial Judges, supra, adopts the prevailing rule:
"Questions should be limited to material and relevant matters having relation to the qualification or disqualification of the jurors. They should not anticipate the instructions of the court and demand reaction thereto."
Defendant contends that our original judgment in this case conflicts with that in State v. Crittle, 263 La. 418, 268 So.2d 604 (1972), handed down the same day. However, the judgment in State v. Crittle noted the following distinction:
"Under the present facts and circumstances surrounding defense counsel's questioning of prospective jurors, we find that the trial judge restricted him too severely and too narrowly. Counsel was not present in court on the Monday prior to the instant trial when the prospective jury panel was instructed; there was no requirement that he be present. The jury panel was not reinstructed in counsel's presence. Counsel was interrupted at the inception of these proceedings; he was not allowed to try this case to the best of his ability."[3]
Under the circumstances of the present case, we conclude that the trial judge did *604 not abuse his discretion in disallowing the additional questions concerning the juror's understanding of and reaction to the various rules of law deemed applicable to the case.
For the reasons assigned, our original judgment affirming the conviction and sentence is reinstated and made the final judgment of this Court.
BARHAM, J., dissents for reasons assigned in dissent on original hearing.
TATE, J., dissents for the reasons noted by the dissents at the original hearing.
DIXON, J., dissents.
NOTES
[1] "I, Ernest Sheppard, do wish to make the following statement of my own free will and accord, without any threats or promises, after duly being advised of my constitutional right to remain silent, at the Alexandria Police Dept. at 10:25 A.M.

"Tuesday, I saw Peanut, I don't know his real name, they say he is Leonard Bell, in front of his mother's house on Harris St. I stopped and was talking to him and he asked me if I wanted to make some real "money. I asked him how and he told me to just don't worry about it. This was about 2 o'clock in the afternoon. I left and went around to the snow cone stand and after a while I went home. About 2:30 that same afternoon Peanut came over to Lee Esther's house at 1212 Turregano St. and just came up in the house. He told me let's go. I asked him where but he said he was going to get his uncle's car at 10th and Fulton Sts. Me and Peanut walked to the parking lot at 10th and Fulton Sts. It was a Ford or Chevrolet, I think it was light brown. Peanut raised the hood to start it and told me to put my foot on the accelerator. It started and Peanut drove the car and we went back to Lee Esther's house and went inside. I got a 410 gauge double barrel shot gun that I had hid at the house. I found this shotgun about two weeks ago under a building down Lower Third St. Peanut took the shotgun and wrapped it in an army blanket and put it in the front seat of the car. Peanut was driving and we went to his sister's house and Peanut went in and stayed a minute and came out and then we went to his mother's house. He went in and in a few minutes he came out and we took off. Peanut told me he was going to Commercial Securities on Lee and get the place. I told him no, let's wait until tomorrow and then he said the time was right now. We parked on Schnack St. I told him there was too many people in there. Peanut told me to wait here he was going to check it out. In a few minutes Peanut came out and he was walking fast. He got in the car and Peanut drove off. He went down Schnack to Overton and turned left and went thru the underpass. While we was driving Peanut told me that he had got the place and it was simple, he had been planning it a long time. When we got to the parking lot on Fulton St. at the parking lot Peanut put the money sack with the money in his pants by his belt. He put the black hat and the gold sweater under the front seat and he put the shotgun under the back seat. I asked him if he was going to leave all that stuff in the car and he told me he was going to take care of all that. We walked to the Tuxedo Cab stand on Lee St. and got a cab to bring us to Vance and Harris Sts. Then we walked to Peanut's house. Peanut told me to go in the bathroom. I did. In a minute he came in the bathroom and showed me the white money bag and about $179.00 cash. He told me he was going to give me a little change. He gave me $75.00 and I left and went home. I spent my part of the money. I don't know what he did with his. After I was arrested and in jail I found out that there was about $700.00 taken and I just considered the description of the man in the robbery the other night at the service station on Broadway and it sounds like Peanut.
 "Signed Ernest Sheppard
"Witt.
"[Sgd.] Lt. C. Ezernack
"Lt. C. Ezernack
 "[Sgd.] Thomas LeJeune
 "Lt. T. LeJeune"

[2] "I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me, and no pressure or coercion of any kind has been used against me.
 "Signed Ernest Sheppard
"Witness: [Sgd.] Lt. O. Ezernack"

[1] This Court has occasionally upheld the trial court's broad discretion in permitting interrogation of a juror about a particular rule of law. See e. g., State v. Plumlee, 177 La. 687, 149 So. 425 (1933): "unusual and novel points of law".
[2] Current judicial reform is moving in the direction of expediting the voir dire examination of jurors, a procedure that has contributed substantially to court delays and congestion. See State v. Manley, 54 N.J. 259, 255 A.2d 193 (1969) and the authorities therein cited; Levit, et al., Expediting Voir Dire: An Empirical Study, 44 So.Cal.L.Rev. 916 (1971); Justice in the States: Addresses and papers of the National Conference on the Judiciary (1971), especially Edward Bennett Williams at p. 37.
[3] The author of this opinion dissented in State v. Crittle.