285 So.2d 234 (1973)
STATE of Louisiana
v.
Kenneth Dale CORBIN.
No. 53625.
Supreme Court of Louisiana.
October 29, 1973.
Rehearing Denied November 30, 1973.
*236 Jerry A. Kirby, Kirby & McLeod, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Charles A. Traylor, II, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Kenneth Dale Corbin was charged and convicted of the crime of distributing and dispensing lysergic acid diethylamid, a controlled dangerous substance commonly known as LSD, to Jerry Harper contrary to Section 971 of Title 40 of the Revised Statutes. He was sentenced to serve six years imprisonment at hard labor and to pay a fine of $3,000 with one year imprisonment in default of payment.
Nine bills of exceptions were reserved at the trial.

Bill No. 1
John William Meehan was being examined on voir dire as a prospective juror by defense counsel who asked, "Do you feel that an undercover agent should sell dangerous controlled substances himself?" The question was objected to by the State's attorney and the objection was sustained. The ruling is correct.
Generally it may be said, regulating the scope of voir dire examination is left largely to the discretion of the trial judge, and he is to be accorded a wide latitude in that respect. La.Code Crim.Proc. art. 786; State v. Sheppard, 263 La. 379, 268 So.2d 590 (1972); State v. Coleman, 260 La. 897, 257 So.2d 652 (1972).
In his per curiam to this bill the trial judge was of the opinion the question was an improper attempt to elicit from the juror in advance his opinion concerning the weight of certain evidence the defendant hoped to introduce. Hypothetical questions, he said, and questions which call for prejudgment of any supposed set of facts are not permissible on voir dire. His opinion is supported by decisions of this Court. State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); State v. Henry, 197 La. 999, 3 So.2d 104 (1941).
Voir dire examination is designed to test the competency and impartiality of prospective jurors and may not serve to pry into their opinions concerning evidence to be offered at trial. State v. Square, 257 La. 743, 244 So.2d 200 (1971).

Bill No. 2
Later, during the examination of the prospective juror Madden, he was asked if he knew the defendant and the defendant's father. In answering the interrogation on that subject he stated that he knew the defendant and his father and had known the father for a long time. He stated that he and defendant's father had to work together an "awful lot", sometimes on the same job and that they were close friends. When he was excused for cause at the request of state counsel, the defense objected and reserved this bill.
Defense counsel argues that the court usually asks the prospective juror when he states a cause to be excused whether he could, in spite thereof, render a fair and impartial verdict on the law and the evidence produced in court. This was not done and the defense argues that the *237 omission constitutes an abuse of the discretion vested in the trial judge.
According to the per curiam to this bill, the questioning also reflected that the juror, because of his close friendship with defendant's father, and his acquaintance with the defendant, had serious doubts that he could serve as a fair and impartial juror.
Aside from the fact that nothing in this record indicates that the trial judge applied different standards in excusing prospective jurors for cause, the State only exercised three of its peremptory challenges. Thus the defense cannot complain. "The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law." La.Code Crim.Proc. art. 800.
This bill has no merit.

Bill No. 3
The State's principal witness, the undercover agent Jerry Harper, had undergone extensive direct examination by the State and intensive cross-examination by defense counsel. On redirect the State confined its questioning of the witness to matters brought out on cross-examination. At the conclusion of the redirect-examination, defense counsel sought to again cross-examine the witness. When the prosecution objected, the trial judge upheld the State's position. This bill was reserved.
In support of the bill, the sole contention urged is that the judge had the right in his discretion to permit recross-examination and it was error to refuse. There is no merit in this contention. On redirect the State confined its questioning to matters brought out on cross-examination. Refusal to permit recross-examination under these circumstances was proper. La.R.S. 15:281; State v. Scruggs, 165 La. 842, 116 So. 206 (1928).

Bill No. 4
This bill was reserved when the defense objected to the qualification of Gretchen Fowler as an expert in the identification of lysergic acid diethylamide.
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court." La.R.S. 15:466. Gretchen Fowler had been employed by the Northwest Louisiana Crime Laboratory for approximately two and one-half years where she had engaged in the identification of narcotic and dangerous drugs under the direction of Ray Herd who was director of the State Police Laboratory for 18 years; she earned a Bachelor's Degree in Zoology at McNeese State University and earned credit for 29 hours of chemistry, three of which were earned since her degree was conferred. In addition to her formal experience, she attended various seminars and conventions of forensic scientists. She had been accepted as an expert in Louisiana courts on approximately twenty occasions.
The competency of an expert is a question of fact. State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971); State v. Square, 257 La. 743, 244 So.2d 200 (1971). The trial judge did not err in accepting this witness as an expert in her field of study and experience.

Bill No. 5
Defense counsel called for the court to appoint a polygraph operator to test all witnesses of both the State and the defense and to supply the jury with the results of the tests. The State's attorney readily agreed to this stipulation, but the *238 court declined to permit this procedure for lack of authority in our law. Although there is no specific authority on the question, our Court has held that lie detector tests are inadmissible when offered by either party, either as substantive evidence or as relating to the credibility of a party or a witness.
Without further legal authority, and without any personal stipulations by the witnesses to subject themselves to the polygraph test, the trial judge properly denied the request.
There was, moreover, no showing on the reliability or accuracy of these tests. The universal rule in American jurisdiction is that the results of lie detector tests are inadmissible for there is a lack of probative value and insufficient scientific reliability, as well as an unduly prejudicial effect upon the jury.
Some courts refuse to sanction the use of stipulations on the basis that polygraph tests are unpredictable and misleading and hence their reliability and usefulness to the court and jury remain the same despite stipulations for their use. The cases were reviewed in the Court of Criminal Appeals of Texas in Romero v. State, 493 S.W.2d 206 (1973), viz.:
In LeFevre v. State, 242 Wis. 416, 8 N.W.2d 288 (1943), there was a stipulation, but the Wisconsin Supreme Court simply held that the results of a lie-detector test offered by the defendant were not admissible, citing State v. Bohner, 210 Wis. 651, 246 N.W. 314 (1933). There was no discussion of the effect of the stipulation.
In State v. Trimble, 68 N.M. 406, 362 P.2d 788 (1961), the New Mexico Supreme Court held that the fact that the defendant had signed a waiver did not alter the rule regarding admissibility of the results of lie-detector tests.
Further, in Conley v. Commonwealth, 382 S.W.2d 865 (Ky.App.1964), the Kentucky Court of Appeals wrote:
". . . Furthermore, since we are holding lie-detector results inadmissible, the written agreement that such might be introduced was not binding." 382 S.W.2d at 867.
In Stone v. Earp, 331 Mich. 606, 50 N.W.2d 172 (1951) (a civil case in which results of a lie-detector test were rejected), the court said:
"We are not unmindful of the fact that at the direction of the trial court, the parties agreed to submit to the tests, but whether by voluntary agreement, court direction, or coercion, the results of such tests do not attain the stature of competent evidence.. . ." 50 N.W.2d at 174.
In People v. Zazzetta, 27 Ill.2d 302, 189 N.E.2d 260 (1963), the Supreme Court of Illinois said:
". . . While a defendant may understandingly stipulate to much in a criminal trial, and may waive many objections, we think it manifestly unfair to bind him by a stipulation regarding the trustworthiness of scientific opinion far beyond his expected ken. . . ."
These cases take the position that it is inconsistent for a court to affirm the unreliability of lie-detector tests and at the same time admit into evidence the results of a stipulated test.
In Pulakis v. State, 476 P.2d 474, 479 (Alaska Sup.Ct.1970), the court, after reviewing numerous authorities, wrote:
"On the basis of our study of the judicial authority and academic literature in this area, we conclude that the results of polygraph examinations should not be received in evidence over objection. Even if no objection has been tendered, the trial court ordinarily should reject such evidence. A stipulation for admission does not increase the reliability of polygraph results and therefore should not lead to *239 any deviation from the exclusionary policy." (Emphasis added.)
In concluding the Texas Court declared:
In the instant case, we conclude as did the Alaska Supreme Court in Pulakis that, based on our study, the results of polygraph tests should not be received into evidence, over objection, even if there had been a prior agreement or stipulation. Such stipulation does nothing to enhance the reliability of such evidence when offered by either side on the issue of the guilt or innocence of the accused.
There is no merit to this bill.

Bill No. 6
The State objected to a question to the defense witness, Carolyn Saucier Gentry, seeking to establish the reputation of the undercover agent Harper "among your group." Harper's credibility had been under continuous attack by the defense, and this attempt was premised upon his reputation in a specific, limited group. This is not permissible. Credibility of a witness may be attacked generally, by showing that his general reputation for truth or moral character is bad. La.R.S. 15:490. The inquiry, however, must be limited to general reputation, and cannot go into particular acts, vices or courses of conduct. La.R.S. 15:491. What is called for in such cases is the opinion of the community, and not the witness. It is elementary that the individual opinion of the impeaching witness is not admissible, either as a basis for his estimate of the truth and veracity of the witness sought to be discredited, or as proof of the general reputation of the witness whose credibility is attacked. State v. Foster, 153 La. 154, 95 So. 536 (1923). As the trial judge observed, "reputation is not established by an inquiry as to a person's standing within a certain segment or circle of the population, but can be established only by reputation in the community at large."

Bill No. 7
No mention was made of this bill in the defense brief. It is, therefore, considered abandoned. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).

Bill No. 8
Testimony of the State's witness concerning the character of defense witnesses was allowed by the trial judge over defense objection. The per curiam noted that the unresponsive comments of the witness were not prejudicial since all of the defense witnesses had candidly and repeatedly admitted to being involved in the drug culture. La.Code Crim.P. art. 921.

Bill No. 9
This final bill was reserved to remarks in the State's closing argument which the defense asserts were tantamount to a comment upon the failure of the defendant to testify in his own defense in violation of Article 770(3) of the Code of Criminal Procedure. The remarks complained of are:
You've got to decide who is telling the truth in this case. And certainly if you find that Mr. Harper lied to you about any fact that is material to the charges against this man, then you are entitled to disbelieve everything he said, or to believe only such as you care to believe. But you must find that he lied to you as a material fact relating to this case. That is what the judge is going to tell you.
Now who said he lied? Nobody said he lied about what happened on June the 14th. There is not one molecule of testimony in this case that he lied about anything that happened on June 14this there?
These remarks do not refer to the failure of the defendant to testify in his own defense. The law requires that such a remark *240 must be direct and the inference plain to come within the prohibition of Article 770(3). State v. Howard, 262 La. 270, 263 So.2d 32 (1972); State v. Isaac, 261 La. 487, 260 So.2d 302 (1972).
Furthermore, the defense objection sets forth no basis for the objection, which alone furnishes no grounds for error. A failure to move for a mistrial is a waiver of the error, since Article 770 requires a motion by the defendant.
This bill has no merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., concurs.
DIXON, J., concurs with reasons.
TATE, J., concurs but (Bill # 5) he feels that the trial judge's better exercise of his discretion would have been to allow the jointly-agreed-to lie-detector tests.
DIXON, Justice (concurring).
Counsel in criminal cases are afforded wide latitude in voir dire examination. State v. Abe Jones, Jr., 282 So.2d 422 (1973), (in which State v. Bell, 263 La. 434, 268 So.2d 610 (1972); State v. Sheppard, 263 La. 379, 268 So.2d 590 (1972); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971) were overruled on this point); State v. Hills, 241 La. 345, 129 So.2d 12 (1961). In State v. Jones, supra, the defendant complained of the curtailment of voir dire examination when a prospective juror was asked if he believed that a man was guilty if indicted by a grand jury. This court concluded that such a question was relevant and was improperly excluded. In the instant case the question was more closely related to the merits of the case, rather than the qualifications of the juror. As such, the trial judge properly exercised his discretion. Article 786 C.Cr.P.